### EMMA CHAPMAN v. JOHANNA CHAPMAN.

#### No. 1099.

**1. Marriage—License Not Essential.**

Where the marriage ceremony was performed by a minister, and was followed by cohabitation as man and wife for several years, it was a valid marriage, although celebrated without a license.

**2. Same—Second Marriage Invalid.**

Where the wife is alive and not divorced, the husband can not contract a legal marriage with another woman, though the forms of the law as to marriage be complied with.

**3. Wife's Right to Administer on Husband's Estate.**

The preference right of the wife, as such, to administer on the deceased husband's estate, belongs only to a lawful wife.

**4. Administration—Appeal from Probate to District Court—Jurisdiction.**

Where, in a contest in the Probate Court over the right to administer on a deceased husband's estate, between two persons each claiming to be his wife, an appeal from the judgment there is taken to the District Court, the latter court acquires thereby only such jurisdiction as the Probate Court had, and is not authorized to adjudicate the title to the property involved.

APPEAL from Victoria. Tried below before Hon. S. F. GRIMES.

*A. B.* and *W. M. Peticolas,* for appellant.—1. Although in this State the law will presume a legal marriage from evidence of cohabitation and repute,—known as "common law" marriage—yet proof of separation of the parties after a term of such cohabitation, together with proof of a subsequent marriage of one of the parties with due forms of law, will rebut the presumption of the common law marriage, and the second will be held valid. 1 Bishop on M. & D., secs. 485-493. Ingersoll v. McWillie, 30 S. W. Rep., 56; Jenkins v. Jenkins, 20 Am. State Rep., 318 (83 Georgia, 283); Jones v. Jones, 30 Am. Rep., 471 (48 Md., 391); Weatherford v. Weatherford, 50 Am. Dec., 210 (20 Ala., 545).

That the emancipation proclamation did not validate Johanna's marriage. Livingston v. Williams, 75 Texas, 655.

2. The court erred in rendering said judgment because Thos. Chapman having been separated from his first wife (if she was such) for so long a time, the presumption of innocence would obtain in favor of the second wife, and the law would presume that he had been legally separated from his first wife, and would adjudge the second wife entitled to the administration and to the property as survivor. Carroll v. Carroll, 20 Texas, 741; Lockhart v. White, 18 Texas, 102; Nixon v. Land and Cattle Co., 84 Texas, 410; Lee v. Smith, 18 Texas, 145; Lambert v. Blanchard, 43 Iowa, 228.

3. The court erred in rendering said judgment because, even if the first marriage to Johanna Chapman had been legal and valid, the second wife, having married in good faith (as she offered to prove), and the community property having been acquired by the joint labors of herself and husband during their marriage relation, she is entitled to one-half of said property and to the control and administration of said property as survivor. Smith v. Smith, 1 Texas, 630; Routh v. Routh, 57 Texas, 602; Morgan v. Morgan, 1 Texas Civ. App., 318; Nixon v. Land and Cattle Co., 84 Texas, 408; Lee v. Smith, 18 Texas, 145; Babb v. Carrol, 20 Texas, 749; Babb v. Carrol, 21 Texas, 766; Yates v. Houston, 3 Texas, 433.

4. Where two parties of opposite sexes have by continued living together formed what is known as a "common law" marriage, an abandonment of such relation by one or both, will prevent a community interest in favor of either in the property acquired after such abandonment by the other; if subsequent to such abandonment the other contract a marriage in due form of law. Henderson v. Ryan, 27 Texas, 670; Bishop on M. & D., secs. 485-495, and cases above.

*Fly & Hill,* for appellee.—1. No man can have more than one wife in Texas. This wife has the right to administer or qualify as survivor. Criminal Code of Texas, art. 324. Rev. Stats., art. 1861 (2); 14 Am. & Eng. Enc., p. 499 and note 1; Routh v. Routh, 57 Texas, 589, and authorities cited.

2. The statute not prohibiting, a common law marriage is valid in Texas. Holder v. State, 29 S. W. Rep., 793; Cumby v. Henderson, 6

Texas Civ. App., 519, on rehearing; Ingersoll v. McWillie, 30 S. W. Rep., 56; Meister v. Moore, 96 U. S., 76; 14 Am. & Eng. Enc., 514 (note 4), 517, 525 (9).

3. A man and woman legally married at common law or otherwise remain man and wife until separated by divorce or death. Routh v. Routh, 57 Texas, 589, and authorities cited.

WILLIAMS, ASSOCIATE JUSTICE.—This is a contest over the right to the administration of the estate of Thomas Chapman, deceased. The proceeding was instituted in the County Court by the application of Jesse R. White for letters of administration. Appellant appeared and contested the application, alleging that she was the widow of deceased; that the property to be administered was community property of him and herself, and was exempt to her, and asserting the right, as survivor, to control and administer it. White replied, denying that appellant had ever been the wife of deceased, and alleged that Johanna Chapman, the appellee, had been his only lawful wife and was his widow, and that she had waived her right to administer in his favor. In the County Court, appellant was held to be the widow of deceased and the survivor of the community, and as such entitled to administer. From the judgment so ordering, White appealed to the District Court. Johanna, who had filed in the County Court her waiver of any right to administer in favor of White, filed a plea of intervention in the District Court, averring that she was the surviving widow of deceased; that the property in question belonged to the community estate, and that she was entitled to control it as such survivor. She prayed that in case the court found that there was no necessity for an administration of the estate, the property be turned over to her as the surviving widow. The District Court adjudged that Johanna was the lawful wife of Thomas Chapman; that Emma was never his lawful wife; that any alleged marriage between her and deceased was unlawful, and that Johanna, as surviving wife, was entitled to administer the estate. It appeared from the evidence that in August, 1865, without license, Thomas and Johanna were married, the ceremony being performed by a minister, and that they lived together until 1873, when they separated, but were never divorced. They had born to them a son and daughter, both of whom are still living. For a considerable part of the time while they so lived together, Emma Wade resided in the same neighborhood, and all of the parties were acquainted with each other. In 1878, Thomas and Emma procured a license in Calhoun County, and the marriage ceremony between them was performed by a justice of the peace in that county, and they lived together as man and wife until the death of Thomas, in 1893. They also had children, who are living. The property in controversy, or most of it, was acquired during the existence of this relation between Thomas and Emma. It consists of 160 acres of land, patented to Thomas as a preemption in 1889, and some personal property. Upon this land he and Emma lived with their children until his death. His son by Johanna

also lived on it. The parties were all colored, and were slaves until the general emancipation of slaves took place. These facts were agreed to between the parties at the trial.

A bill of exceptions recites, that during the trial, appellant offered to prove that she married Thomas Chapman in good faith, believing that he was a single man, and that no impediment to their marriage existed, being so assured by him; that she did not know that Johanna Chapman was then the wife of Thomas Chapman, or had ever been legally married to him; that Johanna lived in the same neighborhood with herself and Thomas from the date of their marriage until his death; knew that they were living together and never denied the legality of their marriage or asserted marital rights in herself. This evidence was excluded, but the bill of exception does not state the objection or ground on which this was done, nor does it state how the proof was to have been made. The judgment recites that the court suggested that there was probably no necessity for administration, and thereupon counsel for contestant (appellant) suggested that Johanna Chapman should appear and set up her claim to the property involved, so as to have all issues involved fully settled in this proceeding, whereupon, with consent of the court, the plea of intervention was filed. The only adjudication, however, made by the court is that before stated. The conclusions of law of the judge hold that the property in question (which had been inventoried by Emma in connection with her pleading) was the community property of Thomas and Johanna, and that she was entitled to administer on the estate; and that the marriage between Thomas and Emma was illegal and void, and that she was entitled to no part of the estate.

*Conclusions of law.* —1. We are of the opinion that the marriage between Thomas and Johanna Chapman was a valid marriage, notwithstanding it was celebrated without a license, and that, not having been legally dissolved, it continued in force until the death of the husband. Ingersoll v. McWillie, 30 S. W. Rep., 56; Holden v. State, 29 S. W. Rep., 793; Cumby v. Henderson, 6 Texas Civ. App., 519.

2. It being admitted that there was no divorce, the court cannot presume or find that there was, and hence Thomas Chapman was legally incapable of contracting a second valid marriage, and his connection with Emma Chapman, though assumed under the forms of a lawful and regular marriage, did not have any validity as a marriage. Under the laws of this State a man cannot, while legally married to one woman, form a marriage with another. The earlier decisions, as to the effect of putative marriages on property rights under the Spanish law, are not applicable to attempted marriages entered into in this State since the adoption of the common law and our statutes regulating the subject. The opinion of Judge Walker in Routh v. Routh, 57 Texas, 589, in our judgment, correctly states the law on this subject.

3. The right given by our statutes to the survivor of a marriage to administer the estate of the deceased spouse and the property which be-

longed to them in common (Rev. Stats., arts. 1681, 2167, 2181) is given to him or her who is recognized by the law as the lawful husband or wife of the deceased, and, as appellant was never lawfully married to Thomas Chapman, she had not the right to administer in preference to any one else. For the same reason there was no community estate, such as is contemplated by the statute, between herself and the deceased. The community estate is created by law as an incident of marriage, and does not arise from contract between the parties. It is created by law only as between those who occupy towards each other the relation of husband and wife. Whatever may be the interests of parties, related to each other as were appellant and Thomas Chapman, in property acquired during their connection, such interests do not constitute the community estate recognized by law to exist between the parties to a lawful marriage. If appellant had an interest in any of the property which was sought to be brought into this litigation, it was because she acquired right or title to it in some other way than by the mere operation of the statute under which the right to half of the property acquired by either husband or wife during marriage is vested in the wife. Such right is given by law to the wife, as such, because she is the wife, and not because of the performance of services to the husband, or because she is permitted by her companion to assume the station and enjoy the other privileges belonging to a wife, where she is not such in law and fact. If appellant acquired the right to any of the property or an interest in it by the operation of other principles, it belongs to her in her own right and needs no administration. There was no marital partnership between herself and Thomas Chapman such as the law establishes between husband and wife as resulting from marriage, which needed winding up, and hence there was nothing upon which her claim to administer a community estate could rest. The only community estate was that of Thomas Chapman and appellee. The right to the appointment as administratrix of Thomas Chapman, as well as the right as survivor of the marriage to control the community estate, belonged to appellee, and appellant has no ground to complain that the court below so held.

4. Questions are raised as to the rights of the two parties in the property acquired after the attempted marriage between appellant and Chapman. As we have seen, the contest was over the right to administer, and did not involve any adjudication of titles to the property. The question as to the validity of the two marriages was involved, as affecting the right to administer. The question, as to whether or not there was a community estate between Chapman and appellant which should be left to her management and control, was also involved. But, in determining them, the Probate Court determined them for the purpose of passing upon the several applications, and not for the purpose of adjudicating titles to property. That, it had no jurisdiction to adjudicate. The judgment that appellee has the right to administer the estate of her deceased husband and their community estate, does not determine what property belonged to either of those estates. If any other

person has title to any property claimed to belong to either estate, the Probate Court could not, by its judgment in this proceeding, preclude an assertion of it hereafter. The cause was in the District Court, it is true, but it was there by appeal from the Probate Court, and the District Court, by the appeal, acquired only such jurisdiction as the Probate Court had. It is true that the record recites that the appellant suggested that appellee appear and set up her claim to the property involved so as to have all issues involved settled in this proceeding, and that the court consented that appellee's plea on intervention should be filed. But no judgment was rendered adjudicating anything but the right to administer. The presiding judge, in his conclusions, expresses his opinion that appellant has no right to any of the property, but, as no judgment was rendered as to the title to the property, we understand him to mean that she has no right which affects this proceeding.

It therefore becomes unnecessary for us to determine whether or not appellant has an interest in the property which she can enforce. As before stated, if she has any interest, it is not that which is given to a wife by the laws regulating marital rights. And, as the evidence which was excluded could not, in our view, have affected the controversy as to the right to administer, but, if it has any legal significance at all, could only affect the question as to appellant's property rights, there was no error in excluding it. We do not intimate that it could, under our present laws, have any bearing on the question of property.

*Affirmed.*

Delivered October 10, 1895.

Writ of error refused.