[S. F. No. 5415. In Bank.—September 7, 1911.]

## IDA H. COATS Respondent, *v.* LEE B. COATS, Appellant.

MARRIAGE—ANNULMENT—PHYSICAL INCAPACITY OF WOMAN—RIGHT TO PARTICIPATE IN PROPERTY JOINTLY ACCUMULATED.—A woman who has in good faith entered into a marriage, which is subsequently annulled at the instance of the other party on account of her physical incapacity of entering into the marriage state, is entitled to participate in the property which has been accumulated by the efforts of both parties during the existence of the supposed marriage, and while she in good faith believed that such marriage was valid.

ID.—LEGAL STATUS OF PARTIES TO VOIDABLE MARRIAGE.—Such a marriage is not void in the extreme sense. The husband had the right to attack it, and to have it annulled, but in the absence of such attack, it was good as against every body. Third parties could not question its validity in any way, and even the husband himself was bound by it until and unless he undertook to set it aside by means of an action for annulment.

ID.—COMMUNITY PROPERTY—APPORTIONMENT OF PROPERTY—DISCRETION.—Even though, strictly speaking, there is no "community property" when there has not been a valid marriage, the courts will, in dividing gains made by the joint efforts of a man and a woman living together under a voidable marriage which is subsequently annulled, apply, by analogy, the rules which would obtain with regard to community property where a valid marriage is terminated by death of

the husband or by divorce. The apportionment of such property between the parties not being provided by any statute, should be made on equitable principles, and the amount to be allotted to her is to be determined by the exercise of the sound discretion of the trial court.

ID.—PROPORTIONATE AMOUNTS CONTRIBUTED BY PARTIES.—In an action by the woman, after the annulment of the marriage, to recover her portion of the property accumulated by the parties while the marriage was in existence, the court will not attempt to adjust their respective rights in proportion to the amount each contributed thereto.

ID.—JUDGMENT ANNULLING MARRIAGE—ACTION FOR APPORTIONMENT OF PROPERTY—ESTOPPEL.—The judgment in the action annulling the marriage, in which no property rights of the parties were in issue or determined, does not estop the former wife from subsequently maintaining an action to recover an appropriate portion of the property accumulated by them during the existence of the marriage.

ID.—CONCLUSIVENESS OF FINDING—APPEAL.—In such action, a finding that the question of property rights was not presented by the pleadings in the annulment suit, and that no disposition of property was made or attempted to be made by the judgment in that suit, is conclusive on appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Charles H. Garoutte, Sullivan & Sullivan and Theo. J. Roche, and Walter H. Linforth, for Appellant.

F. E. Johnston, H. L. Johnston, L. E. Johnston, William Grant, and Cushing & Cushing, for Respondent.

SLOSS, J.—The plaintiff and the defendant intermarried in November, 1887. In January, 1906, the defendant, Lee B. Coats, obtained a judgment annulling the marriage, on the ground of the physical incapacity of the plaintiff, Ida H. Coats. After such judgment had become final, this action was commenced to obtain a division of the property which had been accumulated by the parties during the existence of the marriage. The court below gave the plaintiff judgment for ten thousand dollars. From this judgment the defendant appeals.

The appeal is taken on the judgment-roll alone.

The findings are as follows: The plaintiff and the defend-

ant intermarried in the county of Tulare on or about the twenty-sixth day of November, 1887, and lived together thereafter continuously until on or about the ninth day of January, 1906. On or about said ninth day of January, 1906, the defendant herein, Lee B. Coats, commenced an action in the superior court of Los Angeles County to annul his marriage with the plaintiff herein upon the sole ground that said Ida H. Coats was at the time of their marriage physically incapable of entering into the marriage state, that such incapacity had continued until the time of the filing of the complaint in said annulment suit and that the same was incurable. On the sixteenth day of January, 1906, the said court duly gave and made its judgment and decree annulling the marriage upon said ground of incapacity. The plaintiff entered into said marriage relation in the full belief in good faith that she was physically capable of marrying and she continued in good faith in said belief for more than eighteen years thereafter, and up to the date of the filing of the complaint in said action for annulment. During the existence of said marriage relation between plaintiff and defendant there was accumulated a large amount of property. The efforts of both plaintiff and defendant were devoted constantly and at all times during said marriage to the best interests of each other in the accumulation of said property. At the time of the marriage the defendant was engaged in farming, in partnership with his brother, in Tulare County, California, and the said partnership at that time owned personal property in which the defendant had an interest worth not to exceed three thousand dollars. Prior to the marriage, the defendant owned an undivided interest in a hundred and sixty-acre tract of land in Tulare County. With the exception of his interest in the partnership and in this tract, the defendant owned no property at the time of the marriage with the plaintiff. For ten years after the marriage the plaintiff and defendant were engaged in farming the land referred to and other lands which were rented by defendant jointly with his brother, or individually. During this period the defendant conducted the farming operations and the plaintiff did the housekeeping, cooked for defendant's employees, and performed all the other duties of a housewife. She also assisted in conducting the farm. In 1897, the defendant entered into partnership with one Bricker in the business of

CLX Cal.—43

buying and selling horses and mules. Until 1901, the plaintiff remained upon the farm and continued to perform the duties hereinbefore detailed. In 1901, the plaintiff, at the defendant's request went to Los Angeles, and thereafter lived with defendant at hotels or in apartments in San Francisco and in Los Angeles as directed by defendant until on or about the sixteenth day of January, 1906. During this time she did all that was required of her by defendant in the way of services and in the accumulation of property, but after the year 1900 the services rendered by her in the accumulation of property were, from a monetary standpoint, of no pecuniary value. The services so rendered by plaintiff were rendered by her solely because of the relations existing between her and the defendant as found by the court, and not otherwise.

After the marriage of the parties a large amount of property was accumulated and was lost in several ventures through no fault of plaintiff or defendant. In the year 1901, the defendant was practically without any property other than his interest in the land first above mentioned and his interest in the partnership of Bricker & Coats. This partnership interest was of the value of about twenty-five hundred dollars, and was accumulated after the said marriage. With these exceptions all of the property owned by him at the time of the annulment of the marriage was acquired subsequent to the year 1900. At the time of the annulment of the marriage, to wit, on the sixteenth day of January, 1906, the defendant and Bricker owned personal property to the value of $139,905.31. The interest of the defendant Coats therein was an undivided one half, amounting in value to $69,952.65. Said property was so owned free and clear of encumbrance, and neither the partnership nor Coats was then indebted. Subsequent to the decree of annulment, Coats drew from the partnership, moneys amounting to over eighty-eight thousand dollars. The defendant's interest in the remaining property of the partnership is of the value of $37,337.50. All of the property which the defendant now has, and all of the money drawn by him from the partnership since January 16, 1906, was acquired or is the proceeds and accumulations of property which was acquired during the married life of plaintiff and defendant. There is a further finding that no disposition of said property or any property was made or attempted to be made in or by

the decree of annulment and that no question concerning the same, or any property, was presented by the pleadings for determination in said annulment suit or considered therein. The plaintiff, it is found has not received any part or portion of the said property. She has no property of her own and is without means.

The conclusion of law drawn from these facts is that the plaintiff is entitled to a judgment against the defendant in the sum of ten thousand dollars and for her costs.

Passing, for the moment, the consideration of certain subsidiary problems which arise on the particular facts found, this appeal presents for determination, primarily, the question whether a woman who has in good faith entered into a marriage which may be avoided at the instance of the other party, is entitled, upon or after annulment, to any participation in the property which has been accumulated by the efforts of both parties during the existence of the supposed marriage, and while she in good faith believed that such marriage was valid. The mere statement of the question would seem to be sufficient to require an answer in the affirmative. To say that the woman in such case, even though she may be penniless and unable to earn a living, is to receive nothing, while the man with whom she lived and labored in the belief that she was his wife, shall take and hold whatever he and she have acquired, would be contrary to the most elementary conceptions of fairness and justice. This marriage was not void in the extreme sense. (*Estate of Gregorson, ante,* p. 21, [116 Pac. 60].) The defendant had the right to attack it, and to have it annulled, but in the absence of such attack, it was good as against every body. Third parties could not question its validity in any way, and even the husband himself was bound by it until and unless he undertook to set it aside by means of an action for annulment.

The argument of appellant in this connection is that, while a voidable marriage is valid unless annulled, yet where there has been a decree of annulment, the decree determines that no marriage ever existed, and renders it void *ab initio.* Accordingly, upon the making of the decree, the children become illegitimate (except for statutory provisions, like section 84 of our Civil Code) and property rights of either party, in so far as they depend upon marriage, are at an end. There is ample

authority supporting the proposition that the effect of a decree of nullity is to declare that the marriage was void from the beginning. (2 Nelson, Div. & Sep., sec. 566; 1 Bish. Mar. Div. & Sep., secs. 259, 277, 1596; 26 Cyc. 919, 920; 19 Am. & Eng. Ency. of Law, 1220; *Matter of Eichhoff,* 101 Cal. 600, [36 Pac. 11]; *Chase* v. *Chase,* 55 Me. 21.) So, too, it is generally held that when a marriage is annulled, property rights dependent upon the existence of the marriage, such as dower and curtesy, are terminated and annulled. (19 Am. & Eng. Ency. of Law, 1221; *Chase* v. *Chase,* 55 Me. 21; *Price* v. *Price,* 124 N. Y. 589.) But these decisions, and others cited by the appellant, deal with the rights of one of the parties in property owned by the other. An interest in such property, dependent solely upon marriage, cannot exist after an adjudication that there has been no marriage. If, as suggested by the appellant, the annulment is to be treated as analogous to a rescission, it should, properly enough, be accompanied by a restoration to the parties of what they respectively had before marriage and what they would have had in the absence of a marriage.

Here, however, the question is a different one. The controversy is not over the property owned by the defendant prior to marriage, or acquired by him alone thereafter, but has to do with the acquisitions of the two parties after marriage and before annulment. If both have contributed to such acquisitions, each has an interest which did not exist at the time of the marriage. The *status quo* could not be restored upon annulment without making some provision for the equitable division of this property. In the absence of fraud or other ground affecting the right to claim relief, there can be no good reason for saying that either party should, by reason of the annulment, be vested with title to all of the property acquired during the existence of the supposed marriage.

"A void marriage ordinarily confers no rights upon either of the parties in respect to the property of the other such as would be conferred if the marriage were valid. As to property accumulated during the existence of the relation, however, quite a different question is presented." (Note to *Deeds* v. *Strode,* 96 Am. St. Rep. 272. Thus, in *Fuller* v. *Fuller,* 33 Kan. 582, [7 Pac. 241], the court said that, "in all judicial separations of persons who have lived together as husband and wife, a fair and equitable division of their property should be

had." It is true that this expression was not necessary to the decision, but the principle declared was afterwards applied by the same court in *Werner* v. *Werner,* 59 Kan. 399, [68 Am. St Rep. 372, 41 L. R. A. 349, 53 Pac. 127]. In that case, the trial court, in annulling a marriage on the ground that the wife had a former husband living, had awarded to her one half of the property accumulated through the joint efforts of the parties while they were living together as husband and wife. The judgment was affirmed on appeal. A similar ruling was made in *Buckley* v. *Buckley,* 50 Wash. 213, [126 Am. St. Rep. 900, 96 Pac. 1079], where, upon the annulment of a marriage, the wife was awarded a one-fourth interest in the real property of the husband. In Texas, too, the courts have, in several cases, reached similar results. (*Carroll* v. *Carroll,* 20 Tex. 732; *Morgan* v. *Morgan,* 1 Tex. Civ. App. 315; *Lawson* v. *Lawson,* 30 Tex. Civ. App. 43, [69 S. W. 246]; *Barkley* v. *Dumke,* 99 Tex. 150, [87 S. W. 1147]; *F. W. & R. G. R. Co.* v. *Robertson,* (Tex. Civ. App.) 121 S. W. 202.)

The decision of this court in *Jackson* v. *Jackson,* 94 Cal. 446, [29 Pac. 959], while not, perhaps, a direct authority on the point under discussion, has persuasive weight in support of the views already expressed. There the court, in annulling a marriage voidable under section 61 of the Civil Code, allotted to the husband one half of property which he had theretofore deeded to the wife under conditions entitling him to disaffirm the transfer for fraud. The property in question was, apparently, acquired after marriage, and is referred to in the opinion of the court (pages 462-3) as community property. The appeal was by the wife and she did not, so far as is shown, question the propriety of making a division, in some way, of such property. But in the concurring opinion of Justice Harrison, in which Justice Paterson concurred, this language is used: "It may be conceded that the parties to this action entered into the contract of marriage under such circumstances that it was valid to all intents and purposes until annulled by decree of the court; but the fact that the defendant had at that date a former wife living, from whom he had not been divorced, gave to the plaintiff the right to have the marriage annulled upon the discovery of such fact. (Civ. Code, sec. 82, subd. 2.) Upon its dissolution, there would arise the same equitable grounds for an equal division of the property that had been

acquired by the parties during the existence of the relation of husband and wife as would exist upon the dissolution of any valid contract of marriage for a cause other than adultery or extreme cruelty."

We think the sentence last quoted, although not binding as a declaration of a majority of the justices, lays down the just rule to be applied in cases of this character. Even though it may be true that, strictly speaking, there is no "community property," where there has not been a valid marriage (*Chapman* v. *Chapman*, 11 Tex. Civ. App. 392, [32 S. W. 564]; see 68 Am. St. Rep. 376, note), the courts may well, in dividing gains made by the joint efforts of a man and a woman living together under a voidable marriage which is subsequently annulled, apply, by analogy, the rules which would obtain with regard to community property where a valid marriage is terminated by death of the husband or by divorce. The apportionment of such property between the parties is not provided by any statute. It must, therefore, be made on equitable principles. In the absence of special circumstances, such as might arise through intervening claims of third persons, we can conceive of no more equitable basis of apportionment than an equal division. Until the making of the annulment decree, the marriage was valid, and the property in question was impressed with the community character. Upon annulment, such property, even though it be no longer community property, should be divided as community property would have been upon a dissolution of the marriage by divorce or the death of the husband.

If these views be sound, it is entirely immaterial that the bulk of the property was acquired between the years 1900 and 1906, and that the plaintiff's services in its accumulation were "of no monetary value." She is not suing to recover for services rendered under a contract· for labor, nor to establish the value of her interest in a business partnership.. What she did, she did as a wife, and her share of the joint accumulations must be measured by what a wife would receive out of community property on the termination of the marriage. "The law will not inquire . . . whether the acquisition was by the joint efforts of the husband and wife, or attempt to adjust their respective rights in proportion to the amount each contributed thereto. The law will not concern itself with such an inquiry,

but will leave the parties to share in the property in the same proportion as though the marriage contract was what the wife had every reason to believe it to be, i. e., a valid marriage." (*F. W. & R. G. R. Co.* v. *Robertson*, (Tex. Civ. App.) 121 S. W. 202.)

If then, the facts would have justified an allotment to the wife of one half of the property acquired by the parties, there can be no complaint of the allowance of ten thousand dollars, which was much less than one half.

On the question of plaintiff's good faith, appellant urges that she could not have been in ignorance of the fact of her physical incapacity for eighteen years. But any inquiry in this respect is foreclosed by the court's finding, which is not open to attack on this appeal.

Finally, it is argued that the plaintiff's property rights, if she had any, might have been adjudicated in the annulment suit, and that she is estopped by the judgment in that suit from litigating the claim here presented. A judgment is conclusive only upon the issues presented by the pleadings. (Freeman on Judgments, sec. 249) and actually adjudicated. (*Bank of Visalia* v. *Smith*, 146 Cal. 398, [81 Pac. 542].) Thus, it has been held in this court that if in an action for divorce the question of the disposition of community property is not presented by the pleadings or determined by the decree, the parties are not precluded from subsequently asserting their rights with respect to such property. (*De Godey* v. *De Godey*, 39 Cal. 157; *Biggi* v. *Biggi*, 98 Cal. 36, [25 Am. St. Rep. 141, 32 Pac. 803]; *Kirschner* v. *Dietrich*, 110 Cal. 502, [42 Pac. 1064].) For like reasons, the judgment annulling the marriage cannot estop plaintiff from now litigating her property claims. The court below found that the question of property rights was not presented by the pleadings in the annulment suit, and that no disposition of property was made or attempted to be made by the judgment in that suit. This finding is conclusive on the present appeal. In this connection the appellant relies on averments of his answer showing that, in answering the complaint in the former action, the plaintiff (defendant in that action), waived alimony. If it were conceded that this would affect the subject of the present action, the alleged waiver cannot be considered. There is no finding with respect to it. The judgment being supported by the findings made, it must

be presumed, in the absence of a contrary showing in the record, that there was no evidence which would have sustained a finding in defendant's favor on this issue. (*Himmelman* v. *Henry,* 84 Cal. 104, [23 Pac. 1098]; *Winslow* v. *Gohransen,* 88 Cal. 450, [26 Pac. 504]; *Roberts* v. *Hall,* 147 Cal. 434, [82 Pac. 66].)

The judgment is affirmed.

Angellotti, J., Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.

In denying a rehearing the court in Bank rendered the following opinion on October 7, 1911:—

THE COURT.—The petition for rehearing is denied. To prevent misunderstanding, there should, however, be some modification of the opinion filed. We do not hold that a woman occupying the position of the plaintiff here is, under any and all conditions, and as a matter of strict legal right, entitled to one half of the property acquired during the existence of the supposed marriage. The amount to be allotted to her is to be determined by the exercise of the sound discretion of the trial court. Under the circumstances here shown, it cannot be said that the court below abused its discretion in awarding ten thousand dollars to the plaintiff.