[Sac. No. 2415. In Bank.—August 28, 1917.]

KATHERINE A. MILLAR, Appellant, v. ROBERT F. MILLAR et al., Executor, etc., of the Will of James Millar, Deceased, Respondents.

APPEAL — INSUFFICIENCY OF EVIDENCE — LACK OF SPECIFICATIONS.— The sufficiency of the evidence to sustain the findings will not be considered on an appeal from a judgment, or on an appeal from an order denying a new trial, where the appeal is based on a bill of exceptions, if the bill of exceptions relied on contains no specifications of insufficiency of evidence.

ID.—NEW TRIAL—NOTICE OF INTENTION—INSUFFICIENT RECORD.—A notice of intention to move for a new trial not included in the bill of exceptions constitutes no part of the record, and the statement in such a notice that the party intends to move on the ground, in general terms, of "insufficiency of the evidence to justify the findings, decision, and judgment of the court," even if such a general specification were sufficient, cannot be considered as a specification of the insufficiency of the evidence.

ID.—MOTION FOR NONSUIT—WHEN NOT REVIEWABLE.—An order denying a nonsuit will not be reviewed on appeal upon any ground not precisely and specifically stated in the motion for the nonsuit or where no ground is sufficiently stated.

ACTION FOR MAINTENANCE—ALIMONY PENDENTE LITE—EFFECT OF FINAL JUDGMENT FOR DEFENDANT.—In an action by a wife for separate maintenance, a final judgment that the plaintiff is not entitled to recover from the defendant any payment of alimony or any payment of money whatsoever for her maintenance, will not preclude her from collecting money due her under any order which may have been ·made *pendente lite* for her temporary support, costs, or counsel fees.

MARRIAGE—ANNULMENT—FRAUD CONSTITUTING GROUND.—A secret preconceived determination not to allow matrimonial intercourse, if persisted in after marriage, is a fraud by which the consent of the other party was obtained, warranting annulment of the marriage under subdivision 4 of section 82 of the Civil Code.

ID.—FRAUD—PROMISE WITHOUT INTENTION OF PERFORMING.—Entering into the marital relation is an implied promise to fulfill the obligation of matrimonial intercourse which is essential to the marital relation. A promise made without any intention of performing it constitutes actual fraud in the making of ordinary contracts under section 1572 of the Civil Code, and there is no good reason why this is not true with regard to the marital relation.

ID.—CAUSE OF ACTION FOR ANNULMENT AS DISTINGUISHED FROM CAUSE FOR DIVORCE.—The alleged fraud in such a case is not based upon a violation of a duty of the matrimonial relation, but upon a fraudulent representation made by one of the parties at the time of the marriage which goes to its original validity and renders it, at the suit of the injured party, void *ab initio,* and it is therefore immaterial that the law provides for the dissolution of a marriage for specific violations of duty after marriage, including the duty to have reasonable matrimonial intercourse.

ID.—FRAUD—WAIVER—COHABITATION AFTER KNOWLEDGE OF FRAUD.— The cohabitation with full knowledge of the facts which, under subdivision 4 of section 82 of the Civil Code, will bar the right to annulment of a marriage for fraud is cohabitation as husband and wife, *indicating assent of the injured party to the relationship* notwithstanding the fraud; the mere fact that the parties remained together, "ostensibly as husband and wife," during a few months between the marriage and their separation does not establish such cohabitation on the part of the injured party.

ID.—PLEADINGS—SUFFICIENCY OF CROSS-COMPLAINT FOR ANNULMENT.— The absence of an allegation in a cross-complaint for annulment of marriage that immediately upon discovery of the alleged fraud the injured husband ceased to cohabit with the wife (who was the plaintiff in an action for separate maintenance) will not be considered on a rehearing by the supreme court in Bank after decision in Department, it appearing that the action was tried upon the theory that the cross-complaint sufficiently alleged a cause of action for annulment.

ID.—ANNULMENT OF MARRIAGE—PLEADINGS—RESIDENCE.—Allegations of residence by the injured party in the state for one year and in the county for three months preceding the commencement of the action are not required in pleading a cause of action for annulment of a marriage, which is a proceeding maintained upon the theory that for some cause existing at the time of the marriage no valid marriage ever existed.

ID.—CODE PROVISIONS — DISTINCTION BETWEEN ACTIONS FOR DIVORCE AND ACTIONS TO ANNUL MARRIAGE.—Certain provisions of the code pertaining to actions for divorce have no application to actions for annulment of marriage.

ID.— CONDONATION NOT A DEFENSE.— Condonation, whether pleaded or not, is not a defense to a cause of action for annulment of marriage.

APPEAL from a judgment of the Superior Court of Solano County, and from an order denying a new trial. W. T. O'Donnell, Judge.

The facts are stated in the opinion of the court.

Metson, Drew & Mackenzie, R. G. Hudson, and Marion De Vries, for Appellant.

Frank R. Devlin, and A. E. Bolton, for Respondents.

ANGELLOTTI, C. J.—Katherine Millar brought this action against James Millar for separate maintenance. Millar answered denying the validity of the marriage, and by way of cross-complaint alleged that his consent thereto was obtained by fraud. He asked that the marriage be annulled. Judgment was given for him, annulling the marriage. The appeal is taken by plaintiff from the judgment and the order denying her motion for a new trial, and also from an order denying her motion for a further allowance of costs and counsel fees.

Millar died after the judgment had been entered and pending the appeal.

It is earnestly contended that the evidence was not sufficient to sustain certain findings of the trial court. The sufficiency of the evidence to sustain the findings of the trial court cannot be reviewed on the record before us.

It is settled by a long line of decisions of this court that the question of the sufficiency of the evidence to sustain the findings cannot be considered on appeal from a judgment where the bill of exceptions relied on contains no specification of insufficiency of evidence. The same thing is true as to an appeal from an order denying a new trial where the appeal is based on a bill of exceptions. (*Hawley* v. *Harrington*, 152 Cal. 188, [92 Pac. 177].) Some reliance is placed on the claim that the notice of intention to move for a new trial specified in general terms "insufficiency of the evidence to justify the findings, decision, and judgment of the court," but even if such a general specification were sufficient, which it is not, the notice is not included in the bill of exceptions and constitutes no part of the record on appeal. It is further suggested that we may consider the evidence for the

purpose of reviewing the ruling of the trial court denying a motion for a nonsuit. The answer to this is that the motion for a nonsuit did not sufficiently specify any ground. The only ground stated was that "there is no evidence before the court justifying it in granting the relief prayed for, or any relief whatever." It is thoroughly settled by a long line of decisions that an appellate court will not review the ruling of the trial court denying a motion for a nonsuit, upon any ground not precisely and specifically stated in the motion, and where no ground is sufficiently stated, will not review it al all. In *Miller* v. *Luco,* 80 Cal. 257, 261, [22 Pac. 195], the ground stated was "that plaintiffs had failed to prove a sufficient case." It was said: "It is the settled law in this state that a party moving for a nonsuit should state in his motion precisely the grounds on which he relies, so that the attention of the court and the opposite counsel may be particularly directed to the supposed defects in the plaintiff's case. The motion made here did not comply with this rule, and it was therefore properly denied." (See, also, *Coffey* v. *Greenfield,* 62 Cal. 602, 608; *Coghlan* v. *Quartararo,* 15 Cal. App. 668, [115 Pac. 664]; *Sanchez* v. *Neary,* 41 Cal. 487; *Shain* v. *Forbes,* 82 Cal. 582, [23 Pac. 198]; *Bronzan* v. *Drobaz,* 93 Cal. 650, [29 Pac. 254]; *Durfee* v. *Seale,* 139 Cal. 607, [73 Pac. 435].) It follows from what we have said that as to all questions of fact we are concluded by the findings of the trial court, which must be taken as true for all the purposes of this appeal.

The findings of the trial court, so far as material, are substantially as follows: On January 2, 1913, a marriage was duly solemnized between the parties in San Jose. At the time of such marriage plaintiff did not intend to consummate the marriage, in that she did not intend to have sexual intercourse with Millar. She "entered into the marriage contract and the solemnization thereof with the intent that she would not consummate the marriage or fully enter into the relation arising out of the marriage contract, and entered into the same for the purpose of obtaining maintenance, support, and property from said defendant, and without any intent upon her part to perform the obligations of the contract of marriage or be anything more to the defendant than a wife in form." Ever after the marriage plaintiff persistently refused to have sexual intercourse with Millar, not-

withstanding his solicitations, and without any reasonable
excuse therefor, and at all times refused to occupy the same
bed with him, all in pursuance of her determination exist-
ing at the time of the marriage to so refuse. By reason of
her refusal, the parties have never had any sexual connec-
tion. So far as appears they did until August 15, 1913, re-
main together in the manner usual to husband and wife, the
court finding that after the marriage, in accord with the plan
theretofore made, they journeyed together to several places
in the United States and back again to California. Millar
entered into the marriage contract in good faith with the
intent to fully perform all the obligations of the marriage
relation, and then believed that plaintiff did the same, and
was deceived ''by the false and fraudulent consent thereto,
given by plaintiff.'' On August 15, 1913, Millar notified
plaintiff in writing substantially to the effect that because
she entered into the marriage with no intent of performing
the duties and obligations thereof, and persisted in refusing
to perform, he ''rescinded said contract,'' and would not con-
tribute further toward her support and maintenance. Plain-
tiff's action for maintenance was commenced prior to Octo-
ber 31, 1913, and Millar's answer and cross-complaint were
filed February 9, 1914.

1. Our Civil Code, in the section prescribing the grounds
existing at the time of the marriage upon which the mar-
riage may be annulled, specifies as one of such grounds ''that
the consent of either party was obtained by fraud, unless
such party afterwards, with full knowledge of the facts con-
stituting the fraud, freely cohabited with the other as hus-
band or wife.'' (Subd. 4, sec. 82.) An action based on
this ground may be brought by the injured party within four
years after the discovery of the facts constituting the fraud.
The main question presented by this appeal, in view of the
findings, is whether the secret determination of one of the
parties to a marriage at the time of entering into the con-
tract or relation of marriage, to absolutely refuse to the
other all sexual or ''matrimonial intercourse as husband and
wife,'' as it is termed in section 96 of the Civil Code, con-
sistently persisted therein at all times after the marriage,
the other party having acted in good faith, constitutes such
a fraud as is included within the scope of subdivision 4, sec-

CLXXV Cal.—51

tion 82, of the Civil Code, and warrants an annulment of the marriage.

Upon further consideration of this question we are satisfied that the conclusion reached thereon in Department was correct, and that the question must be answered in the affirmative. Marriage is defined by our Civil Code as "a personal relation arising out of a civil contract, to which the consent of parties capable of making that contract is necessary." (Section 55.) As we have seen, our law provides that when such consent on the part of either party is obtained by "fraud," the marriage may be annulled at the suit of the other, unless the fraud is waived by free cohabitation after discovery; in other words, such marriage is voidable at the instance of the injured party. As was said in *Sharon* v. *Sharon,* 75 Cal. 1, 8, [16 Pac. 345], while the contract is simply that the parties forthwith enter into the relation of marriage, "the rights and obligations of that status [relation] are fixed by society in accordance with the principles of natural law." These principles of natural law are perfectly understood, certainly in so far as the particular matter here involved is concerned. The obligation of the relation in this behalf is such, to use the language of the supreme judicial court of Massachusetts in *Smith* v. *Smith,* 171 Mass. 404, [68 Am. St. Rep. 440, 41 L. R. A. 800, 50 N. E. 933], as to be "essential to the very existence of the marriage relation," a proposition as to which there appears to be no dissent in the authorities. (See in this connection, *Sharon* v. *Sharon,* 75 Cal. 1, 33, [16 Pac. 345] ; *Dickinson* v. *Dickinson,* L. R. [1913] Prob. Div. 198.) Our own statutes expressly recognize this by making it a ground for annulment of marriage "that either party was, at the time of marriage, physically incapable of entering into the marriage state, and such incapacity continues, and appears to be incurable." (Civ. Code, subd. 6, sec. 82.) The physical incapacity here referred to, as is thoroughly established, is the physical incapacity to consummate the marriage by coition. In consenting to a marriage, in consenting to enter that personal relation, each of the parties impliedly promises the other that he or she will perform the duties and obligations of the relation, and the promise and consent of one are given in consideration of and in reliance upon the promise and consent of the other. As it was put in *Moore* v. *Moore,* 94 Misc. Rep.

370, [157 N. Y. Supp. 819]: "So one who goes through the marriage ceremony represents in so many words his intention and purpose to fulfill all the obligations of a husband to the woman he marries." One who so promises and represents, thus obtaining the consent of the other, with the secret determination not to fulfill the promise, must be held to have obtained such consent of the other party by fraud—at least where the promise relates to a material matter. That a promise made without any intention of performing it constitutes actual fraud is elementary law with relation to ordinary contracts, and is expressly declared by our Civil Code. (Section 1572.) As said in *Martin* v. *Lawrence,* 156 Cal. 194, [103 Pac. 913]: "Where a defendant makes a promise touching a substantive part of the consideration moving to the plaintiff in bad faith and without intent to perform the promise, it constitutes a species of fraud well recognized in equity and in terms denounced by the code." We can see no good reason why this is not true with regard to the marriage relation. It may readily be conceded that a court should not annul a marriage on the ground of fraud except in extreme cases, where the particular fraud goes to the very essence of the marriage relation, and especially is this true where the marriage has been fully consummated and the parties have actually assumed all the mutual rights and duties of the relation. In such a case considerations of public policy intervene, and courts are loath to annul a marriage. (See *Smith* v. *Smith,* 171 Mass. 404, [68 Am. St. Rep. 440, 41 L. R. A. 800, 50 N. E. 933].) But no consideration of public policy precluding relief exists under such circumstances as are established by the findings in this case, and the authorities generally recognize that in such cases the marriage should be annulled for fraud. The latest case to which our attention has been called is that of *Anders* v. *Anders,* 224 Mass. 438, [L. R. A. 1916E, 1273, 113 N. E. 203], in which it was held that the husband was entitled to a decree annulling the marriage on the ground of fraud where the woman went through the marriage ceremony solely to secure the right to appear as a married woman, secretly intending to leave the husband immediately after the ceremony, and carried the plan into effect, and where the husband was deceived and acted in good faith. Referring to the earlier case of *Cowles* v. *Cowles,* 112 Mass. 298, in which the court held that utter

denial of marital intercourse was not ground for a decree of nullity, saying, "it plainly does not go to the original validity of the marriage, and affords no ground for declaring the nullity of it," the court said: "It is pretty plain that in deciding *Cowles* v. *Cowles* this court did not have in mind the case of a woman going through the marriage ceremony with a preconceived intention never to allow marital intercourse." In deciding the case the court said: "In the case at bar the libelee went through the marriage ceremony with an intention never to perform any one of the duties of a wife. . . . That plan she carried into effect. It is settled that a contract for the sale of goods is induced by fraud, and for that reason voidable where the purchaser had an intention when the contract was made not to perform his promise to pay for them. If an intention not to perform his promise renders a contract for purchase of property voidable, *a fortiori* the same result must follow in case of a contract to enter into 'holy estate of matrimony.'" There is no distinction in principle between that case and the one at bar. It is true that there the intention was never to perform *"any . . . of the duties of a wife,"* while here the intention was only as to one. But that one was of such a character as to be "essential to the very existence of the marriage relation," and the fraud was one going to the original validity of the marriage within the contemplation of section 82, subdivision 4, of the Civil Code. It was said by the New York court in *Moore* v. *Moore,* 94 Misc. Rep. 370, [157 N. Y. Supp. 819], with relation to the representations implied from a consent to a marriage, "misrepresentations of purpose and intention, whether express or necessarily implied, which constitute a material fact inducing another to act, constitute a fraud affecting the validity of a contract affected thereby." In that case the marriage was annulled. We find nothing in the authorities to contravene the conclusion we have reached on this question.

That the law provides for the dissolution of the relation of marriage by divorce for specific violations after marriage by one party of duties appertaining to the relation, including the particular obligation here involved, is altogether immaterial. Such subsequent violations in no way go to the original validity of the marriage. The alleged fraud in this case is not based upon any mere violation of any duty of the marriage relation, but upon a fraudulent misrepresentation made

by plaintiff at the time of the marriage, by which the consent of Millar to enter into the marriage was obtained, a matter, as we have seen, which goes to the original validity of the marriage, and renders it, at the suit of the injured party, void *ab initio*.

2. It is claimed that the cross-complaint does not state facts sufficient to constitute a cause of action, in that it does not allege that immediately upon discovery of the fraud Millar ceased to cohabit with plaintiff, and also that no such condition is established by the findings. This point appears never to have been made until the petition for rehearing in this court after decision in Department. No demurrer was interposed to the cross-complaint in the lower court, and the cause was apparently tried upon the theory that it sufficiently alleged a cause of action for annulment, on the ground of fraud.

As we have seen, the law provides that a marriage may be annulled on this ground at the suit of the injured party "unless such party afterward, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband and wife." It may be conceded that a complaint based on this ground should substantially negative this exception, and that the same should be substantially found. While the cross-complaint is perhaps not as precise and specific in this regard as it might have been made, we think the facts alleged and found sufficiently negative the exception declared by the statute to withstand the attack now made. It is definitely alleged, and found, that, owing to the persistent refusal of plaintiff, there was never any marital intercourse between the parties, and that, within what must be held to be a reasonable time, Millar, on account thereof, notified plaintiff that their relations were terminated and that he would no longer contribute to her support and maintenance. According to the allegations of her complaint, he thenceforth willfully failed to provide her with the common or any necessaries of life, or with any money with which to support herself. Absence of any waiver of his rights on the part of Millar sufficiently appears. We think the facts alleged and found are necessarily inconsistent with any theory that Millar "freely cohabited" with plaintiff as his wife within the meaning of subdivision 4 of section 82 of the Civil Code. The mere fact that they remained together,

under the circumstances alleged and found, during the few months between the marriage and the separation, ostensibly as husband and wife, does not, in our opinion, establish such cohabitation on his part. The language used in the statute was designed to declare what conduct on the part of the injured party should conclusively establish a waiver by him of the fraud, in so far as any action for annulment was concerned. If, with full knowledge of the facts, he freely assumed the rights of marriage, thus affirming the relation notwithstanding the fraud, he must be held to have waived the fraud and is barred from any action for annulment. The cohabitation specified is cohabitation *as husband and wife,* and we have no manner of doubt that in the connection in which the words are used they repel the idea that the mere remaining together of the parties for the time preceding the final separation, under the circumstances alleged and found, is such cohabitation as was intended to bar an action for a decree of nullity. There was no true matrimonial cohabitation in the sense in which the words are here used, for they must be taken as meaning not simply the mere staying together of the parties *ostensibly* as husband and wife, but such a full and free assumption by the injured party of marital rights as fairly indicates his assent to the relationship, notwithstanding the fraud.

3. Based upon the contention that certain provisions of our Civil Code pertaining to ordinary divorce actions are applicable to actions for annulment of marriage, it is claimed that the cross-complaint of Millar failed to state a cause of action, for the reason that it did not allege residence on his part in the state of California for one year and in the county where the action was brought for three months next preceding the commencement of the action (Civ. Code, sec. 128), and also that the final judgment entered without an interlocutory judgment having first been given is void. (Civ. Code, secs. 131, 132.) This point was made for the first time in the petition for rehearing.

 An examination of the authorities shows that the term "divorce" has sometimes been declared to include annulment proceedings, especially where the marriage was not void in the extreme sense, but only voidable at the option of the injured party. This, however, is not in accord with modern usage. Strictly speaking, the word "divorce" means a dis-

solution of the bonds of matrimony, based upon the theory of a valid marriage, for some cause arising after the marriage, while an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed. This is true even though the marriage be only voidable at the instance of the injured party, or, in the words used in *Estate of Gregorson,* 160 Cal. 21, 25, [Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697, 116 Pac. 60], "capable of being annulled." And the decree of nullity in such a proceeding determines that no valid marriage ever existed. The opinion in *Coats* v. *Coats,* 160 Cal. 671, [36 L. R. A. (N. S.) 844, 118 Pac. 441], shows this to have then been the view of this court, and it was clearly enough stated in the opinion that there was no statutory provision applicable to annulment proceedings for the apportionment of what would be community property if the marriage was valid, although complete provision for the disposition of community property in the event of "the dissolution of the marriage by the decree of a court of competent jurisdiction" was made by section 146 of the Civil Code. The broader meaning is, however, often given to the word "divorce" by reason of the manner in which it is used in statutory provisions. But we can see no warrant in our own statute for holding that, as used in sections 128, 131, and 132 of the Civil Code, it includes annulment proceedings, or any action except the ordinary action for divorce for some cause arising after marriage. These sections are in terms confined to actions for divorce. They are all contained in article III of chapter II, title I of Part III of the Civil Code, an article entitled "Causes for Denying Divorce." The preceding article (II) is entitled "Dissolution of Marriage," while article I is entitled "Nullity," and contains full provision for the annulment of marriage for specified causes existing at the time of marriage. A careful reading of the provisions of these three articles makes it apparent to us that the provisions of article III (Causes for Denying Divorce) relate only to the actions referred to in article II. Article I, as we have seen, treats fully of the annulment of marriages, prescribes the various periods of time within which actions therefor may be brought, and recognizes that a judgment of nullity is conclusive as against the parties. The first section of article II (section 90) declares that "marriage is dissolved

only: One. By the death of one of the parties; or, Two. By the judgment of a court of competent jurisdiction decreeing a divorce of the parties." There follows, in section 92, a statement of the causes for which "divorces" may be granted, which statement is of course exclusive of all other causes, and which specifies only causes arising after marriage. Then follow definitions of the various grounds of divorce so specified. It is obvious that the term "divorce" is nowhere used in this article as including a proceeding for or a decree of nullity. Coming to article III (Causes for Denying Divorce) we find that section 111 provides that divorce must be denied upon showing connivance, or collusion, or condonation, or recrimination, or limitation or lapse of time. A reading of the sections defining the first four of these things shows that they can refer only to the divorce actions treated in article II. As to the matter of limitations or lapse of time, it is provided in this article, in section 127, that "there are no limitations of time for commencing actions for divorce, except such as are contained in section one hundred and twenty-four." Section 124, in the same article, prescribes the time as to all such actions. Section 83 in article I, relating to nullity, prescribes the period of limitation as to all actions for nullity. It is in this article (III) that we find section 128 providing that "a divorce must not be granted" unless the plaintiff has certain qualifications of residence in the state and county where the action is brought, section 130 providing that "no divorce can be granted upon the default of the defendant," etc., and sections 131 and 132 relating to interlocutory and final decrees "in actions for divorce," all designed to guard against fraudulent dissolutions of valid marriages, or to discourage resort to an action for such a dissolution with a view to a hasty marriage with another, and to afford a time between interlocutory and final decree within which the parties to a valid marriage may be reconciled and the status maintained. It seems to us to be too clear for question that the divorce action referred to in all these provisions is the ordinary action for divorce referred to in article II, and that it does not include nullity proceedings. As against this view is simply the fact that the chapter containing these articles (chapter II) is entitled "Divorce" and that as there used in this very general way the term includes annulment proceedings, as well as divorce proceedings.

(*Dunphy* v. *Dunphy,* 161 Cal. 87, 92, [118 Pac. 445].) It was said in the opinion in the case just cited that "it may well be argued that such provisions in the subdivision entitled 'General Provisions' (article IV) as are appropriate in actions for annulment are applicable thereto." However, even this was not decided, and it was distinctly declared in effect in *Coats* v. *Coats,* 160 Cal. 671, [36 L. R. A. (N. S.) 844, 118 Pac. 441], that section 146 (contained in article IV) does not apply to nullity proceedings. And we are not concerned here with any of these "general provisions." In view of the more specific headings of the various articles, and the nature of their provisions, we are satisfied that, notwithstanding the use of the word "Divorce" as the title of the chapter, the term "divorce" in article III cannot be fairly construed as including nullity proceedings.

4. It is claimed that the evidence was such as to require a finding on the question of "condonation," even though there was nothing in the pleadings attempting to set up any such defense. Regardless of all other answers that might be made to this claim, it is sufficient to say that "condonation" is a defense only in the ordinary divorce action for some cause arising after marriage, and is defined as being "the conditional forgiveness of a *matrimonial* offense constituting a cause of divorce." The statutory provisions as to this defense can play no part in the present proceeding. We have already seen that there was no waiver of the fraud which was the basis of this action for annulment.

5. As to the appeal on the ground of error in the matter of alimony, costs, and counsel fees, the only point now made is as to the provision of the final judgment, "that the plaintiff . . . is not entitled to have or recover of or from James A. Millar, the defendant, any payment of alimony, or any payment of money whatsoever for her maintenance or otherwise." It is urged that this is an adjudication that plaintiff was not entitled to any alimony *pendente lite,* or costs or counsel fees necessary to enable her to maintain the action. It seems to us that learned counsel for plaintiff mistake the purpose and effect of this provision of the judgment. To our minds it has no reference whatever to any of these matters. The action was, as we have seen, one by plaintiff for permanent alimony or maintenance, and the provision complained of is in response to her claims in that regard, and

nothing else. It simply adjudicates that she shall not recover any such alimony or sum by way of permanent maintenance, a necessary result of the decree of nullity. If under any order *pendente lite* made for temporary support, or payment of costs or counsel fees, money is still due her, she is not precluded by this provision of the judgment from collecting it. Nor do we think the injunctive provision of the judgment refers to this matter, and we cannot see how it in any degree prejudicially affects plaintiff.

We can see in this record no sufficient warrant for disturbing the judgment of the superior court. No point is now made as to the order denying a further allowance of costs and counsel fees.

The judgment and orders appealed from are affirmed.

Shaw, J., Victor E. Shaw, J., *pro tem.,* Sloss, J., and Henshaw, J., concurred.

Rehearing denied.