WALTON et al. v. WALTON. (No. 7536.)

(Court of Civil Appeals of Texas. Galveston. March 6, 1918. Rehearing Denied April 11, 1918.)

1. MARRIAGE ⟂50(1) — COMMON-LAW MARRIAGE—EVIDENCE.
  Evidence *held* conclusive that a common-law marriage existed.

2. MARRIAGE ⟂22—COMMON-LAW MARRIAGE—DURATION OF RELATION.
  No fixed or continuous period of time of cohabitation is necessary to constitute a common-law marriage.

3. MARRIAGE ⟂51—COMMON-LAW MARRIAGE—QUESTION OF FACT.
  That a railroad man had a sweetheart in every town, and kept other women at intervals at other places, does not make the question of whether there was a common-law marriage one for jury, where there was otherwise positive uncontradicted evidence of a common-law marriage with the woman in question.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Application by Marie Estelle Walton for appointment as temporary administratrix of the estate of Norton A. Walton, deceased. Contested by Nora Walton and another. Judgment for applicant, and contestants appeal. Reversed and rendered.

See, also, 191 S. W. 188.

Terry, Cavin & Mills, of Galveston, F. J. Wren, of Ft. Worth, and John G. Gregg, of Galveston, for appellants. Marsene Johnson, Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, for appellee.

GRAVES, J. Mrs. Marie Estelle Walton, claiming to be the statutory wife of Norton A. Walton, deceased, filed in the county court of Galveston county her application for appointment as temporary administratrix of his estate, alleging that he had been killed while in the employ of the Gulf, Colorado & Santa Fé Railway Company, that his heirs desired to prosecute a suit for damages for his death against the railway company, and that the law required it to be done

in the name of his estate. The Gulf, Colorado & Santa Fé Railway Company filed in its own behalf a contest, alleging that the applicant, Mrs. Marie Estelle Walton, had already filed in the Tenth district court of Galveston county a suit against it for damages for the death of N. A. Walton, that she sought appointment as administratrix of his estate for the sole purpose of enabling her to prosecute that suit, and upon information and belief denying that she was his wife, or that her child was his lawful child; upon like information and belief it further charged that Mrs. Nora Walton and her three children were the lawful wife and children of deceased, N. A. Walton, and then prayed as follows:

"Premises considered, said railway company prays that the court hear evidence and determine by proper decree who is the lawful wife and who are the lawful children of said N. A. Walton, deceased, and that the administrator who may be appointed by the court be directed accordingly, so that suit against your petitioner, if any, may be instituted and prosecuted in behalf of the rightful parties, to the end that your petitioner may be protected by any judgment that may be rendered therein."

Mrs. Nora Walton also filed a contest, alleging that she was the common-law wife of the deceased under a marriage with him of that character, contracted before his attempt to marry the applicant under statutory authority, which had never been dissolved, and asked the appointment for herself. Judgment in the county court went in favor of the applicant and against the contestants, who appealed to the district court, where a like result was had. The contestants, Mrs. Nora Walton and the railway company, have accordingly as appellants brought the district court's proceedings to this court for review. The district court had submitted to a jury the question as to whether there was a common-law marriage between Mrs. Nora Walton and Norton A. Walton, and, upon its finding that there had not been, entered the judgment she here complains of.

By their first and second assignments appellants contend that the court erred in submitting as a fact issue to the jury this question of whether or not there was any such common-law marriage, but should have granted their requested peremptory instruction to find in favor of Mrs. Nora Walton, upon the ground that the undisputed evidence showed there was a common-law marriage between her and Norton A. Walton, and no proper fact issue was therefore left for the jury. After careful examination of the entire body of evidence offered, we are compelled to agree with them, and must sustain both assignments.

Deeming it unnecessary, we shall not attempt to make any full résumé of the testimony, but will only state the salient features; in doing that, it may first be noted that appellee does not seriously contend that the proof made by appellant upon her claim of a common-law marriage with the deceased was controverted, but her insistence is that the testimony of Mrs. Nora Walton herself was so conflicting and contradictory as to be in itself discrediting, and thereby to raise a question for the jury as to whether the alleged marriage in fact existed.

We think the undisputed proof showed an agreement between appellant and the deceased to become husband and wife, and that pursuant to this agreement they lived and cohabited together as such, publicly so held each other out to the world, and were so known, received, and recognized by their neighbors and the community in general, for a period of about four or five years, beginning in 1897, and during which time there were born to them as the fruit of such marriage three children; that they were never divorced; and that all this antedated by several years the attempt of the deceased through the forms of the statutory law to marry the appellee in 1907. Nor is this result dependent alone upon the testimony of Mrs. Nora Walton, for although she was fully corroborated by unimpeached and uncontroverted proof, both oral and documentary, in all respects essential for establishment of the common-law marriage declared upon, it was likewise shown independently; while N. A. Walton was a railroad man of an apparently roving disposition, hence not at home continuously during that period, from 1897 until somewhere about 1903 he and appellant made their home at Ft. Madison, Iowa, living there together as husband and wife at the home of his parents and elsewhere in the town, and were so recognized by his parents, the local merchants, and the community in general; many letters from him to her while away from home during this time, addressed to her as his wife and signed by himself as her husband, the handwriting in a number of them being identified as his by the appellee herself, were offered in evidence, each being the kind of letter a man would ordinarily write to his wife; there was in evidence also a policy of insurance taken out, signed, and made payable by him to appellant as his wife; likewise an application for employment, in which he had been asked the question whether he was or was not married, which was answered by him in the affirmative, and her address in Ft. Madison, Iowa, given.

[1] Although the appellant was the only witness who directly testified to an actual agreement between herself and the deceased to become husband and wife, the undisputed facts shown from entirely separate sources, by inevitable inference at least, demonstrate that there was one; James Walton, the aged father of deceased, N. A. Walton, testified that soon after their marriage they came to his home and lived with his family for some time; that they lived there as man and wife, and he so considered them; that each told him they had been married, and the deceased caused to be published in the local paper in

the town where they lived a notice of their marriage; that his son always held her out to him and to his mother as his wife, and that he had never heard this fact questioned. Pictures were introduced in evidence showing the children of the appellant, along with other grandchildren of the deceased's parents, on picnics and at play, which showed that they were received by all as members of the family. The testimony of one of deceased's brothers was also to the same effect as that of the father; members of the train crew with which he worked while living in Ft. Madison testified that during the time N. A. and Nora Walton were living there they lived as man and wife, that each held out the other as such, and that up until the time of this trial they had never heard this fact questioned.

[2] There may appear some little discrepancy in the length of time these actual relations were shown to subsist, which we have stated as about four or five years, but that becomes wholly immaterial when it is recalled that no fixed nor continuous period of time for their so living together is necessary to constitute such relations a valid marriage as at common law. Such was the trial court's charge, following the holding of this court upon the former appeal of this same cause. Walton v. Walton, 191 S. W. 188. See, also, G. H. & S. A. Ry. Co. v. Cody, 20 Tex. Civ. App. 520, 50 S. W. 135; Schwarz v. Allen, 37 S. W. 986; Chapman v. Chapman, 11 Tex. Civ. App. 392, 32 S. W. 564.

[3] Neither do the statements and admissions made by Mrs. Nora Walton upon cross-examination that the deceased had the reputation of having a sweetheart in every town, that he received many letters from other women, and being a man of that kind, may have been keeping other women at different places, and at intervals, during the time she claimed he was her common-law husband, militate against the force of the previously stated and unassailed facts establishing that relationship; this is necessarily so for the reason that both conditions, deplorable as they might be, could coexist during the same general period of time without destroying the legal effect of his having actually so lived and cohabited with her. And this conclusion really disposes of about the only answer made by appellee to the overwhelming proof offered in substantiation of the common-law marriage alleged; while under the rule announced in McAfee v. Robertson, 41 Tex. 357, and kindred cases, we are not at all prepared to concede that the testimony of Mrs. Nora Walton should be disregarded, as is contended for by appellee, still in the state of this record, as has already been indicated, there was abundant proof from other unquestioned sources.

There are further assignments raising in other forms the same issue as the first two, also some relating to matters of evidence; it becomes unnecessary to discuss them, however, since the conclusion already stated determines the merits of the appeal. No question has been raised in this court as to the right of the railway company to file and prosecute the contest it did in this proceeding, and we do not pass upon that matter.

As the facts were all fully developed below, it follows that the trial court's judgment must be reversed, and judgment here rendered for appellant Mrs. Nora Walton, and it has been so ordered.

Reversed and rendered.