CUNNINGHAM et al. v. CUNNINGHAM et al.    (No. 7637.)*

(Court of Civil Appeals of Texas. Galveston. Dec. 10, 1918. Rehearing Denied Jan. 23, 1919.)

1. APPEAL AND ERROR ☞544(3)—FUNDAMENTAL ERROR—WHAT CONSTITUTES.

Though petition for partition alleged that one of the defendants was a minor without legal guardian, held that, though the record showed no appointment of a guardian ad litem, etc., for such defendant, no fundamental error appeared reviewable in absence of bill of exceptions and statement of facts, where the judgment of partition rendered two years later recited that another defendant, a minor, appeared by guardian ad litem and all of the other defendants by attorney.

2. APPEAL AND ERROR ☞544(3)—FUNDAMENTAL ERROR—DECREE—FINDINGS.

Where the jury's findings showed that one who had celebrated an invalid ceremonial marriage with deceased received more in rents out of his personal property than she had paid in securing title to certain lands in which she was given no share, held, that final decree of partition did not disclose fundamental error in her favor, reviewable in absence of bill of exceptions and statement of facts.

3. MARRIAGE ⊕11—VALIDITY—PRIOR COM-
MON-LAW MARRIAGE.

Where a common-law marriage relation already existed between a man and another woman, a second woman with whom he subsequently celebrated a ceremonial marriage, though she entered into the relation in good faith and in accordance with the statutory law, did not become his wife, and no valid marriage was created.

4. APPEAL AND ERROR ⊕544(3)—FUNDAMENTAL ERROR—PARTITION PROCEEDINGS.

A decree and proceedings in partition *held* not to show fundamental error, reviewable in absence of bill of exceptions and statement of facts, on the theory that the court in its first decree judicially determined that the land was susceptible of partition, and thereafter in conformity to the report of commissioners ordered it sold, and thus violated Rev. St. 1911, § 6101.

Error from District Court, Lavaca County; M. Kennon, Judge.

Action by Antney Cunningham and others against Quincy Cunningham and others. There was a judgment for the former, and the latter bring error. Affirmed.

J. D. Childs, of San Antonio, for plaintiffs in error.

GRAVES, J. This cause is here through writ of error, without a statement of facts or any bills of exception, upon brief and oral argument for plaintiffs in error only, in which contention is made that several such fundamental errors are apparent upon the face of the record as require reversal of the judgment.

[1] The first one asserted is: Since it appears from the petition of plaintiffs below that Quincy Cunningham, Jr., was a minor at the time it was filed, and the subsequent decree ordering partition of the land in which she had an interest did not show her appearance in the cause by guardian ad litem, she was not bound nor her interest disposed of.

Such, however, is not the legal effect of what the record does show. While the original petition does recite that Quincy Cunningham, Jr., was then a minor without legal guardian of either her person or estate, it likewise appears therefrom that this instrument was filed September 25, 1914; whereas, the partition judgment appealed from was not rendered until October 23, 1916, more than two years later. This judgment, after first reciting that the minor defendant, King Cunningham, appeared by his legally appointed guardian, continued: "And all the other defendants appearing in person and by their attorneys announced ready for trial." Quincy Cunningham, Jr., was one of these, and there being nothing elsewhere in the proceedings indicating the contrary, the judgment itself importing verity, the presumption necessarily is that she had become of age in the interim between the dates of filing the petition and entry of the decree. It follows that no fundamental error in this respect is pointed out.

[2] The next one claimed lies in the alleged failure of the final decree to dispose of such rights and equities in favor of Quincy Cunningham, Sr., in what is assumed to be the community land of herself and John Cunningham as arose from the jury's findings that, before the latter's death and during existence of the marriage relation between them, he had paid $42.20 on the particular 96 acres involved in the suit, and that she, after his death, had paid one Newhaus $390.80 upon their community lands generally.

The answer to this suggestion is twofold: First, there is no showing anywhere in the record that Quincy Cunningham, Sr., ever had any interest in the 96 acres, and the court found she had none; second, the extinction of any possible rights or equities she might have had by reason of paying out the $390.80 is shown by the unquestioned answers of the jury that, after John Cunningham's death, she collected $306 in rent from the same lands and $110 from the sale of cattle belonging to him, the two items aggregating an excess against her of $25.20, by which amount the jury further specifically found her indebted to the estate of herself and John Cunningham.

[3] Plaintiffs in error assume two things not justified by the record before us: First, that John and Quincy Cunningham, Sr., were legally husband and wife; second, that the latter owned an undivided one-half interest in the 96-acre tract of land, which seems to have been the one upon which they lived, and upon these assumptions build their attack on the judgment. The jury, however, in a finding not attacked as being without supporting evidence, found that during the same period of time a common-law marriage existed between John Cunningham and another woman, Ann Cunningham, from which condition it necessarily follows that the relation between him and appellant Quincy Cunningham, notwithstanding the fact that it had in good faith and in accord with statutory law been entered into, could not constitute a valid marriage. Walton v. Walton, 208 S. W. 133, and authorities there cited.

Concerning the 96 acres, as above stated, the court found it belonged exclusively to other parties, and there being here no statement of facts and no sort of indication to the contrary, the conclusive presumption is that there was evidence to support it.

Now, the record further shows that out of the property involved in the suit Quincy Cunningham, Sr., was awarded a tract of 141 acres, not including any part of the 96 acres

referred to, and this is complained of for that reason, and also because its value was not given in the report of the commissioners of partition.

Of course, since we must presume, under the court's conclusion, that she had no interest in that tract, the first objection avails nothing; as to the second one, while the commissioners of partition did not state in dollars and cents the value of the 141 acres set apart to her, they did find and report that it constituted a fair and equitable division and partition of her interest in all the lands involved from the interests of all the other joint owners thereof, and the final judgment of the court ratifying and confirming that ·report contained this recitation:

"And it appearing to the court, after having examined said report carefully, that the partition as made between Quincy Cunningham and the other joint owners hereinbefore named, and as shown by the decree of partition in this cause, has been fairly made according to law, and no exceptions having been taken thereto," etc.

In these circumstances, together with the further fact appearing that the 141 acres awarded her was practically a full one-half in acreage of all the land claimed to have been owned in common between herself and John Cunningham, with nothing whatever to indicate that it did not also constitute a full half of the value thereof, it cannot be said that a showing is made of any injustice done to Quincy Cunningham.

[4] Finally, it is claimed the court fundamentally erred in judicially determining in its decree of October 23, 1916, that all the land in suit was susceptible of partition, having then appointed commissioners for that purpose, and afterwards at a succeeding ·term, on April 2, 1917, in its judgment confirming their report to that effect, having held a part of the land incapable of partition and ordering it sold; it is said such procedure was in violation of article 6101, Rev. St. 1911, and rendered the judgment of confirmation void.

Here again we think appellants misapprehend the effect of the first decree and assume more than its terms and import justify; there was no determination that ·any part of the land was susceptible of partition, but the court merely fixed the several undivided interests of all the different parties in the whole of it, and appointed commissioners to make a fair and impartial partition and to report the same in writing under oath to the next term of court; that was done, and at the succeeding term, as appears from the above-quoted one and other recitations in the final judgment, the court then judicially determined the partition contained in such report to have been fairly made according to law, ordered it confirmed, and the report entered as a part of the judgment. While the court seems to have followed the old procedure before the partition statute was put by amendment in its present form, we cannot see that the course taken, especially as affects those who made no objection to it, in any way rendered the final judgment void.

The court below had jurisdiction of the parties and of the subject-matter; the judgment was one which, under the pleadings and what must now be presumed to have been the evidence, it had the power to render, and appellants not having shown themselves entitled to a reversal, affirmance is ordered.

Affirmed.