[Civ. No. 568.   First Appellate District.—February 18, 1909.]

LOTTA MAY HALL HOBBS, Respondent, v. HOWARD S. HOBBS, Appellant.

ANNULMENT OF MARRIAGE—PHYSICAL INCAPACITY OF HUSBAND—SHOWING REQUIRED UNDER CODE.—An annulment of a marriage for physical incapacity of the husband can only be granted under section 82 of the Civil Code, where it appears that the husband "was, at the time of the marriage, physically incapable of entering into the marriage state, and such incapacity continues and appears to be incurable." It is necessary, in such case, to allege and prove that the physical incapacity continues and appears to be incurable.

10 Cal. App.—7

ID.—INSUFFICIENT COMPLAINT FOR ANNULMENT OF MARRIAGE—INCURA-
BILITY NOT SHOWN.—A complaint by the wife to annul the mar-
riage for physical incapacity of the husband, which does not follow
the language of the statute, and neither avers that the physical
incapacity of the husband for entering the marriage state "ap-
pears to be incurable," nor states any facts which show such in-
curability, either as the result of disease, or defect or malformation
of the sexual organs of the husband, and does not show that plain-
tiff is normal in her sexual organs, and that the physical incapacity
of the husband for sexual intercourse was not her fault, does not
state a cause of action.

ID.—INSUFFICIENCY OF EVIDENCE—CONFLICT AS TO PHYSICAL INCAPAC-
ITY—CONTINUANCE AND INCURABILITY NOT PROVED.—Where the only
evidence given upon the trial was that of the plaintiff that during
the two months that they lived together, before the complaint was
filed, defendant was physically incapable and not able to perform
sexual intercourse, and never succeeded therein, and the equally
positive conflicting testimony of the defendant that they had sexual
intercourse together during all the time they lived together, that he
never failed to respond, and that his physical condition was as good
as it ever had been in his life; but there was no evidence that his
physical incapacity continued to the time of the trial, or that it
was incurable, it is wholly insufficient to sustain findings and judg-
ment for the plaintiff annulling the marriage.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Frank H. Kerrigan,.
Judge.

The facts are stated in the opinion of the court.

W. C. Cavitt, for Appellant.

William H. Schooler, for Respondent.

COOPER, P. J.—This appeal is from a judgment of the
superior court annulling the marriage of plaintiff and de-
fendant.

The complaint alleges "that at the time of the marriage
as aforesaid, to wit, on the 12th day of September, 1905,
the said defendant was incapable of entering into the mar-
riage state by reason of the fact that he was unable to per-
form his marital duties and have sexual intercourse with the
plaintiff; that he has never at any time since said marriage
been able to enter the person of plaintiff; that the said de-

fendant has consulted physicians and taken medicine for the purpose of placing himself in a condition to perform his marital duties, but to no avail, and the said defendant has at all times since said marriage been incapable of performing his marital duties, and is now incapable of performing his marital duties, and such incapacity continues.'' Defendant demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was overruled. Defendant thereafter answered, and the case was tried before the court; findings were filed, upon which judgment was entered annulling the marriage.

Defendant claims that the court erred in overruling the demurrer to the complaint, and that the evidence is insufficient to support the findings and judgment.

In our opinion he is correct on both propositions.

The action was based upon subdivision 6 of section 82 of the Civil Code, which reads as follows:

''A marriage may be annulled for any of the following causes existing at the time of the marriage. . . . (6) That either party was, at the time of marriage, physically incapable of entering the marriage state, and such incapacity continues, and appears to be incurable.''

It is plain that this subdivision of the section only authorizes the annulment of the marriage where the ''physical incapacity continues and appears to be incurable.'' It is necessary in such cases to allege and prove that the physical incapacity continues and appears to be incurable. It need not be alleged in the very words of the statute; but in case the language of the statute is not followed, the facts must be alleged to show that the physical condition is such that the impotence appears to be incurable. We can easily imagine cases in which it would only be necessary to allege the facts, and such facts would show that the physical condition would appear to be incurable. In the complaint there is not even an intimation of any defect, malformation or want of the usual sexual organs of defendant, but the bare statement that he is and continues to be incapable of performing his marital duties and having sexual intercourse with plaintiff. It is not alleged that plaintiff is normal in her sexual organs, or that it was not her fault. It is not shown as to whether or not the physical incapacity of defendant was the result of dis-

ease or physical defect of the organs. There is no statement that such condition appears to be incurable.

It is said, in Bishop on Marriage, Divorce and Separation, volume 2, section 1281: "As every pleading, to be adequate, must allege all facts necessary to a *prima facie* case, while yet, with an exception immaterial here, it need not anticipate and answer defenses; and as a sexual impediment to consummation, to be a ground for divorce, must be incurable, or practically so, it follows that the incurable nature of the particular impotence must in some way appear in averment. And so are the approved precedents, nor have we decisions justifying a departure therefrom."

And in *Ferris* v. *Ferris*, 8 Conn. 166, the court said: "We are therefore brought to the single inquiry, whether the only ground for a divorce stated in the petition be sufficient to sustain the decree. The averment is this: 'That at the time of their intermarriage, the said Abel was, ever since has been, and now is, labouring under a corporal imbecility.' Does the term 'corporal imbecility,' as here used, *ex vi termini*, import a confirmed and incurable impotency to consummate the marriage? To me it seems not necessarily to import any such thing. This is mentioned by Blackstone as one of the causes, which may be supervenient. (1 Blackstone's Commentaries, 440.) And Christian, in a note, remarks, 'Corporal imbecility may arise after marriage, which will not then vacate the marriage, because there was no fraud in the original contract.' (1 Blackstone's Commentaries, 440, note 12.) Here he clearly recognizes this as a cause which may be supervenient, and as clearly rejects the idea that the term 'corporal imbecility' has a precise, technical meaning, and absolutely imports a natural, permanent and incurable impotency. Such imbecility may be temporary merely; and in such a sense does the term seem to be used in the petition before us. The averment is that the respondent was 'labouring under a corporal imbecility.' There is not only no intimation that the imbecility is permanent and incurable; but the expressions used strongly imply that it is only temporary. Such, in my judgment, is the plain and obvious import of the language, and there surely can be no pretense that this is a cause for divorce."

As to the evidence, it utterly fails to show that the physical incapacity of the defendant, if any, is incurable. Plaintiff and defendant intermarried September 12, 1905. They immediately took the train for Portland, Oregon, where they remained about a month, at which time they returned to San Francisco. Here they lived together until November 18, 1905, when defendant departed to Portland, Oregon, where he was called by business. Plaintiff accompanied him to the train, kissed him good-bye, and promised to follow him in about two weeks. He gave her money for such purpose. After defendant left, plaintiff wrote him one or two letters, the contents of which do not appear in evidence. In the early part of 1906 (the date does not appear) without warning, the plaintiff commenced this action. Her amended complaint was filed August 28, 1906, and the cause was tried April, 1907. The plaintiff testified that at the time of the marriage the defendant was physically incapable and not able to perform sexual intercourse with her, and that during the two months they lived together he never succeeded in having sexual intercourse with her, to her great annoyance, and that it greatly injured her health.

The defendant, on the other hand, testified as positively that he had sexual intercourse with her during all the time they lived together; that he never failed to respond; that his physical condition was good, as good as it had ever been in his life.

It thus appears that there is a square conflict in the evidence of the only two persons who know the facts as to whether or not defendant was capable of having sexual intercourse.

Conceding that, on this conflict of testimony, the finding of the court is conclusive here, still there is no evidence that such incapacity continued up to the time of the trial, or that it was incurable. No evidence was given as to any defect of the physical person or sexual organs of the defendant. No examination was made of his person, nor does any appear to have been asked for. The incapacity, if any, may have been caused by illness of nervous debility, and may have been temporary only. We know of no presumption that such condition is incurable. The time was short, and

the only proof of impotency during such time is the testimony of plaintiff that the defendant did not, and could not, have sexual intercourse with her. There is a well known and valuable rule of olden times, often repeated in the decisions and text-books, that impotence shall be presumed after three years of ineffectual cohabitation, and shall not be presumed before. It is sometimes called the rule of triennial cohabitation. At the end of three years, if the marriage remained unconsummated, impotence was presumed. The plaintiff was required to show a triennial cohabitation, or that the defect or cause was obvious to inspection; and in all cases where the condition of the sexual organs was an essential element in the proofs the court ordered an inspection of the person by medical experts. These medical inspectors were usually three in number, and were sworn to perform their duties. In one of the old books of English practice the form of the oath was as follows: "You are produced as inspectors in a cause. . . . You respectively swear that you will faithfully, to the best of your skill, inspect the parts and organs of generation of each of said A and B; make a just and true report in writing to the Judge Ordinary of this court, whether the said A is capable of performing the act of generation, and if incapable, whether such his incapacity can be cured by art or skill; and also whether the said B is or is not a virgin; whether she hath or hath not any impediment on her part to prevent the consummation of the marriage, and that one of you will deliver such report under your hands and seals closely sealed up to one of the registrars of Her Majesty's Court of Probate." (Brown Div. Pract., 4th ed., 622, 623.)

These old rules were derived from the canon law, and were invariably enforced in the ecclesiastical courts. (Bishop on Marriage, Divorce and Separation, vol. 2, secs. 1286, 1287, 1307, and cases cited.)

While in modern times the courts do not adhere to the old rule as to three years' cohabitation in order to raise a presumption of impotence, yet they hold that the contract of marriage is of too solemn a nature and of too much importance to society to be set aside or annulled except upon clear proof of such physical condition of one of the parties at the time of the marriage that it would operate as a fraud upon the other party to compel them to live together as husband

and wife in name only, without the comforts of marriage and with no prospect of children. It is therefore in all cases necessary for the plaintiff to establish the impotence at the time of the marriage and its incurable nature. (Bishop on Marriage, Divorce and Separation, vol. 1, sec. 786; *Griffith* v. *Griffith*, 162 Ill. 368, [44 N. E. 820] ; *Bascomb* v. *Bascomb*, 25 N. H. 267; *Lawrence* v. *Lawrence*, 73 Ill. 577.)

The judgment is reversed, and the plaintiff may be allowed to amend her complaint, if so advised.

Kerrigan, J., and Hall, J., concurred.