JOSEPH S. BUNGER, *Appellee,* V. LENA BUNGER, *Appellant.*

No. 17,230.

SYLLABUS BY THE COURT.

1. DIVORCE—*Impotency Defined.* Impotency, as a cause for divorce, means an incurable defect, and not every temporary or occasional incapacity, but permanent and lasting inability for copulation.

2. —————— *Impotency—Evidence Necessary to Prove.* The existence of such a ground for a divorce against an accused wife, susceptible, as it is, of certain determination by expert examination, to which she offers to submit, should not be decided against her unless such decision is supported by the evidence of a physician who has made such examination; the best evidence obtainable should, as in other cases, be required.

Appeal from Johnson district court. Opinion filed October 7, 1911. Reversed.

*W. L. Joyce,* for the appellant.

*E. J. Sheldon,* and *S. J. Shively,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellee brought this action for divorce and for his cause of action alleged, in addition to the formal allegations, substantially that he and the defendant were married on May 17, 1908, and lived together as husband and wife until August 10, 1908; that the defendant was impotent and that he did not know of this fact at the time of the marriage.

For a second cause of action, the plaintiff alleged, in substance, that defendant fraudulently contracted such marriage by misrepresenting the facts as to her condition; that plaintiff relied on her statements and was deceived thereby.

The answer of defendant, so far as necessary to determine whether the decree of the court should be affirmed, is a general and specific denial of the facts alleged in the petition.

Bunger v. Bunger.

The undisputed evidence shows that the plaintiff was nearly seventy years of age; that at the time of the trial he resided with his son, by a former marriage, in this state; that the defendant was about sixty-six years of age; that they were married and lived together in the state of Missouri, as stated in the petition, and that on August 10, 1908, he left her and returned to Kansas where he had previously resided. Also that the defendant had previously been married and had lived with her former husband thirty-five years but had had no children. He testified that during the time he had lived with her he had made not to exceed four attempts with her and had utterly failed by reason of some malformation or obstacle in her person. She testified directly to the contrary on all these questions and to oft-repeated acts of intercourse. On the part of the defendant, two physicians testified that she was well-developed and normal, in their opinions, and that they had each made a physical examination of her.

In rebuttal the plaintiff offered the evidence of two physicians who each said they had never seen the defendant, but testified, in substance, that the examinations, and the methods of the examinations, testified to by the physicians for defendant were not such as to properly disclose whether or not the defendant was normally developed.

The cause of the plaintiff rests upon his evidence alone that the defendant was impotent at the time of the marriage and that there was no incapacity on his part.

The fourth ground of divorce specified in our statute is "impotency." Neither the statute nor any former decision of this court has defined the term. The following excerpt from *Payne v. Payne*, 46 Minn. 467, 49 N. W. 230, affords a satisfactory definition:

"The statute does not define the term 'impotency' but in the law of divorce it means want of *potentia copulandi* and not merely incapacity for procreation. It is an incapacity that admits neither copulation nor

procreation.   And what the law refers to is capacity for *copula vera* and not partial and imperfect or unnatural copulation.   The incapacity must also be incurable: 1 Bishop, Mar. & Div., § 765 *et seq.; D——e v. A——g*, 1 Rob. Ecc. 279."

Also in *Anonymous*, 89 Ala. 291, 7 So. 100, it was held in substance, that before the wife can be granted a divorce on the ground that her husband is physically incapacitated from entering into the marriage state by reason of his malformation and abnormal proportions, the proof should be satisfactory, and as direct as the nature of the question is susceptible of.   The wife must submit to a skilled examination of her person, under order of court, to show that the fault is not with her; and the husband must also submit to such an examination, that the court may be satisfied that the proceeding is not consentive and collusive.   Finding the latter to be the case, relief should be denied, except on clear proof of the charge preferred in the bill.

In *Powell v. Powell*, 18 Kan. 371, it was said:

"When the legislature enacted that a divorce might be granted for impotency, it was intended that the impotence must have existed at the time of the marriage. If a person should become impotent after marriage, the marriage is good, and no ground of divorce exists therefor.   Such is the universal doctrine."   (p. 378.)

It is only inferentially alleged in the petition and only inferentially supported by any evidence that the alleged impotency existed at the time of the marriage, and there is no allegation and no evidence, if impotency existed, that it was incurable.

Impotency as a cause for divorce means an incurable defect; permanent, lasting inability for copulation and procreation.   (4 Words & Ph. Jud. Def., p. 3443; 16 A. & E. Encycl. of L. 3; 14 Cyc. 594.)

"If the defect be curable, then the defendant is not impotent in the sense of the law, for it is not every temporary or occasional incapacity for copulation which is intended, but permanent and lasting inability."

(*Kempf v. Kempf*, 34 Mo. 211, 213; see, also, Taylor, Med. Juris., 6th ed., p. 78 *et seq.*)

The defendant's evidence was taken by deposition in the state of Missouri only a short time before the trial in Kansas. She testified in regard to her health that she was then not well and was not able to attend the trial at Olathe. She utterly denied the charge of impotency and offered to submit her body for examination by any physician or physicians that might be selected by the plaintiff or his attorney. The offer was not accepted. There was no expert evidence of her impotency and the testimony of the plaintiff is not sufficient, giving it full credence, to prove impotency as defined by legal authorities. If it can be said that the evidence of the plaintiff is sufficient to establish the fact that, at the times testified to by him, there was incapacity on the part of the defendant and not on his part, still there was an utter failure on the part of the plaintiff to prove whether it was a temporary and curable inability or permanent and incurable. It devolved upon the plaintiff to prove the latter.

In an action for divorce the public, as well as the parties thereto, has an interest. Public policy requires that a divorce should be granted only when statutory ground therefor is clearly established. The preponderance of the evidence seems to be against the plaintiff as to whether there was a physical defect. Assuming the existence of such defect, there was no evidence that it was incurable. One of the physicians, who was called by the plaintiff, testified as follows:

"Ques. You could not tell from the descriptions of the conditions here in these organs, whether that was a curable condition or an incurable condition? Ans. No, sir."

The other physician, called by plaintiff, was not interrogated on the subject.

The two physicians, called by the defendant, and the

defendant herself, in effect, contradicted the evidence of the plaintiff upon the principal question of fact.

The judgment is reversed and the case is remanded for a new trial with instructions to allow any proper amendments to the petition as indicated; and before the case is again tried to enter an order requiring the plaintiff to deposit with the clerk. of the court for the use of the defendant a sufficient sum of money to pay her transportation from her home to Olathe, Kan., and return; also to pay a competent, impartial physician, to be appointed by the court, for the purpose of making a physical examination of the defendant as to the matter in controversy.