[Civ. No. 4815. First Appellate District, Division Two.—January 17, 1924.]

## FLORENCE D. SHEPARD, Appellant, v. HAROLD E. SHEPARD, Respondent.

**[1]** DIVORCE — EXTREME CRUELTY — MISCONDUCT OF HUSBAND — EVIDENCE—ADMISSIONS.—In an action for divorce on the ground of extreme cruelty, based upon the relations of the husband with other women, after the wife has given positive testimony to prove the misconduct of the husband, testimony by her as to admissions of misconduct made to her by her husband is not hearsay, but proof that the misconduct of her husband had come to her attention, which is essential to constitute cruelty.

**[2]** ID.—UNCONTRADICTED TESTIMONY—SUSPICIONS OF TRIAL COURT—JUDGMENT.—In an action for divorce on the ground of extreme cruelty, based upon the relations of the husband with other women, where the testimony of the plaintiff, which is uncontradicted, is plain and unambiguous and clearly establishes the allegations of cruelty, and such testimony is amply corroborated, the trial court may not reject such evidence and deny the divorce, basing his judgment upon his own suspicions arising outside of the record.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Reversed.

The facts are stated in the opinion of the court.

Pierce H. Ryan for Appellant.

No appearance for Respondent.

NOURSE, J.—The plaintiff sued for a divorce from the defendant upon the grounds of extreme cruelty. The complaint alleged that the parties intermarried in June, 1909; that they resided in the county of Humboldt for the statutory period; that two children were born of the marriage; and that they separated on the 18th of February, 1922. The charge of cruelty found in the complaint related to the conduct of the defendant regarding his association with other women, and it was alleged that during the period of two years last past defendant had received many letters of a loving and affectionate nature from many women other than plaintiff; that he continually flirted with and made love to other women, and that in the month of November, 1921, he stated to plaintiff that he had certain relations of an immoral character with two women. Plaintiff prayed for an interlocutory decree and the custody of her two children. No answer was filed on the part of the defendant, and his default having been entered, the cause came on for trial on the allegations of the complaint just referred to. The testimony of the plaintiff was plain and unambiguous and clearly established the allegations of cruelty. She testified that for a period of about eight years the defendant had been guilty of the conduct of which she complained; that she had often seen letters which were written to him by other women, some of which were shown to her by the defendant and which she had read; that he had frequently stayed out until 2 or 3 o'clock in the morning and sometimes had remained away from home altogether in the company of other women; that a short time before the commencement of the action the defendant had shown her a large number of letters which he had received from other women and upon his promise to discontinue his objectionable conduct she had destroyed them; that in December, 1921, the defendant had contracted a venereal disease through his association with another woman, and that plaintiff thereupon, with her two children, separated from him. She was corroborated by the witness Moore, who testified that during the period referred to he had spent two months with

the defendant and had seen him almost nightly write letters to other women; that he had read portions of letters which the defendant received from other women; that they were all in the nature of love letters; and that the defendant frequently told him that he had been engaged in such conduct for a number of years, that it had caused a great deal of trouble between him and his wife, and that he regretted very much that he had been guilty of such conduct as he felt that he had thereby lost the affection of his wife and that she would demand a legal separation from him. These two witnesses, as well as the plaintiff's counsel, were all subjected to a grilling examination by the trial court upon matters which were not brought out on their direct examination, but which tended to show that the trial court suspected that there was some collusion between the parties for the purpose of obtaining a divorce for the plaintiff. At the close of the trial the trial court entered judgment denying the interlocutory decree, and from this judgment the plaintiff prosecutes this appeal.

On this appeal the appellant relies upon the rule which now seems to be fairly established that a trial court may not arbitrarily disregard the uncontradicted evidence in the case and base his judgment on mere suspicions which he may have in his own mind and which are not supported by the record. No appearance has been made on behalf of respondent, but on September 20, 1922, about one week after appellant's opening brief in this case was filed, there was filed with the clerk of the supreme court, at the request of the trial judge, a document designated "opinion of the court," which is not dated and which does not appear in the official transcript on file herein. It does not appear when the opinion was prepared or whether it was at any time filed in the superior court where the cause was tried. It seems to be rather an answer to some of the contentions made by appellant's brief on this appeal. No findings being necessary because of the default, we are uncertain as to how to treat this document. A brief reference to it, however, will indicate plainly that the denial of the divorce was based upon the suspicions of the trial judge and not upon the evidence brought before him at the trial. [1] Reference is made to the testimony of the appellant as to the admissions of misconduct made to her by her husband. The trial court

says: "This is all hearsay, and framed up for the purpose of this divorce." Of course, this was not hearsay. It was incumbent upon the appellant to show that the misconduct of her husband had come to her attention, otherwise there would have been no cruelty. She had already given sufficient positive testimony to prove that such misconduct existed. At this time she was testifying as to the method of her knowledge of that misconduct and the statements of her husband were positive evidence of that fact and not hearsay. The court's conclusion that this was framed up for the purpose of the divorce was a mere matter of suspicion which is not borne out by any evidence in the record.

The opinion refers to the letter of appellant's counsel addressed to her husband suggesting that if he would drop in to the sheriff's office at Yreka and accept service of the summons he would save the expense of the sheriff's fees and mileage in traveling out into the country to serve him. This letter the trial court points to as evidence of collusion on the part of the respondent. It seems to us that in a case of this nature, where no large property rights were involved and where the attorney for the appellant had been paid but twenty-five dollars for his services, it was but natural for him to suggest a method whereby the expense of the trial would be curtailed, and we find nothing in the letter or in the evidence justifying the court's suspicion of collusion.

Reference is also made to the testimony of the witness Moore, and here it is said that this testimony covered nothing but the admissions of the husband regarding his conduct, but the record does not support this statement. One of the charges of the complaint was that the husband flirted with and made love to other women and that he carried on a voluminous correspondence with such women. The witness Moore testified positively that he had seen the husband write letters to other women and had seen and read portions of letters which he had received from them. This in itself was sufficient corroboration of the testimony of the wife, and, taking the record as a whole, there is ample evidence to warrant an interlocutory decree in favor of the wife.

[2] We come, then, to the only point of law involved on this appeal, and that is whether the trial court may reject all the evidence in the case and base his judgment upon his own suspicions arising outside of the record. The last ex-

pression of the supreme court is found in the concurring opinion of Mr. Justice Lennon in *Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191], in which he says "that it is the general rule that the uncontradicted and unimpeached testimony of a witness tending to establish an issuable fact in the case may not be arbitrarily disregarded by the trial court. (*Hayward* v. *Rogers,* 62 Cal. 348, 372; *Gage* v. *Billing,* 12 Cal. App. 688 [108 Pac. 664]; 10 Cal. Jur., p. 1143.) To the contrary, such testimony must be accepted as proof of the fact which it is offered to establish unless it can be said that such testimony is so inherently incredible and improbable as to amount to no evidence at all. (*Hutchinson* v. *Holland,* 47 Cal. App. 710 [190 Pac. 1072]; *Hynes* v. *White,* 47 Cal. App. 549 [190 Pac. 836].)"

This is precisely the situation which is presented in this record. All the evidence material to the case is found in the testimony of two witnesses, the appellant and the witness Moore. The appellant fully and clearly stated the facts in support of the allegations of her complaint, and the witness Moore sufficiently corroborated her in all material respects. Her counsel was called to the court and compelled to be sworn by the trial judge in order to answer questions covering the court's suspicions that he might be guilty of collusion or that he might have knowledge of collusion on the part of the parties. Throughout the court's examination of these witnesses reference was made to rumors of misconduct on the part of the wife, and statements are found in the court's questions which indicate that rumors and suspicions were afloat regarding the wife and her purpose in seeking this divorce; but in every instance the suspicions of the trial court were denied, and there is, therefore, not a particle of evidence in the record tending to contradict the evidence in support of the allegations of the complaint.

We are satisfied that the judgment must be reversed, and, inasmuch as no findings were required by reason of the default (*Waldecker* v. *Waldecker,* 178 Cal. 566, 568 [174 Pac. 36]), the reversal should carry directions to the trial court to enter judgment in favor of the appellant. (*Brautigam* v. *Brautigam,* 181 Cal. 157 [183 Pac. 529].)

Judgment reversed, with directions to enter judgment for appellant as prayed.

Sturtevant, J., and Langdon, P. J., concurred.