[Civ. No. 18830. First Dist., Div. Two. July 18, 1961.]

ANN STEPANEK, Respondent, v. C. W. STEPANEK,
Appellant.

John R. Lamoreaux, Boccardo, Blum, Lull, Niland & Teer-link and Edward J. Niland for Appellant.

Stave, Bryan & Ames and Robert H. Ames for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment annulling the marriage between the parties and declaring the validity of a gift deed in favor of the plaintiff, Ann Stepanek. On appeal, the defendant, C. W. Stepanek, argues that the evidence does not support the judgment of annulment and that the deed of gift conveying his separate real property to the plaintiff was based on a mistake of fact, and must be rescinded.

The plaintiff's complaint, filed on June 16, 1958, alleged two causes of action, the first for annulment, the second for divorce. Her complaint alleged that the parties were married on May 21, 1958, and separated on June 7, 1958; that there were no children of the marriage but that there was community property consisting of a bank account and household furniture. The complaint further alleged that at the time of the marriage, the defendant was impotent; that his physical incapacity continued and appeared to be incurable, and that since the discovery of this fact, the plaintiff had not cohabited with him.

The defendant answered denying all of the allegations of the complaint except the allegations relating to the date of marriage and the date of separation, and filed a cross-complaint setting forth three causes of action: the first for annulment of the marriage on the ground of fraud because the plaintiff knew she was unwilling or unable to have matrimonial intercourse and concealed these facts from the defendant; the second for annulment on the ground of plaintiff's physical incapability of entering into the married state; and the third for the rescission of a deed of gift of his separate real property which the defendant, immediately after the marriage, executed in favor of the plaintiff in reliance on her promise to be his wife.

The trial court granted the plaintiff an annulment on the grounds of defendant's physical incapacity, found that the defendant was entitled to the household furniture and the commercial bank account as his separate property, and further found that the deed of gift was validly executed, delivered and recorded.

The first argument on appeal is that the evidence is insuffi-

cient to support the finding of defendant's impotence and permanent physical incapacity, in accordance with the requirements of the Civil Code.

The record reveals the following facts: The plaintiff testified that between the date of marriage on May 21, 1958, and the date of separation, June 7, 1958, they made three attempts to have marital relations, but these attempts were unsuccessful because of the defendant's physical incapability. She further testified that the defendant told her that he had drunk so much over the past few years that he couldn't get an erection and was getting old. The defendant testified that on the only occasion on which they attempted to have marital relations, June 3, he had an erection but was unable to maintain it to consummate the act because of plaintiff's physical incapability. Before the trial, a medical examination of the plaintiff was had, but no examination of the defendant was sought. The doctor who examined the plaintiff on May 26, 1958, testified that he found the plaintiff's vaginal opening was quite small. No medical or other evidence was presented about the defendant's condition.

There was also uncontroverted evidence that the plaintiff's age was 38; the defendant's 66; that after their marriage on May 21, the parties did not inhabit the same premises until June 3 because their house was not completed or furnished; that the parties had been married on a previous occasion (June 1955) but that this marriage had been annulled because the defendant did not have a final decree of divorce from his first wife. The plaintiff testified that she and the defendant had marital relations during this earlier marriage, the defendant testified that they had not.

Section 82 of the Civil Code, subdivision 6, provides that a marriage may be annulled, if at the time of marriage, either party was *physically incapable of entering into the marriage state, and such incapacity continues, and appears to be incurable.* ▮▮▮ By physical incapacity is meant the physical incapacity to consummate the marriage by coition (*Millar* v. *Millar*, 175 Cal. 797 [167 P. 394, Ann.Cas. 1918E 184, L.R.A. 1918B 415]), or legal impotence. ▮▮ The law's test is simply the ability or inability for copulation, not fruitfulness (Bishop on Marriage, Divorce and Separation, vol. 1, § 758; *Carmichael* v. *Carmichael* (1923), 106 Ore. 198 [211 P. 916]; 1 Vernier, Am.Fam.Laws, § 42). The inability need be only for normal copulation, not partial, imperfect, unnatural or painful copulation (*Bunger* v. *Bunger* (1911), 85 Kan. 564

[117 P. 1017, Ann.Cas. 1913A 126]; S—— v. S—— (1906), 192 Mass. 194 [77 N.E. 1025, 116 Am.St.Rep. 240]; *Payne* v. *Payne* (1891), 46 Minn. 467 [49 N.W. 230]; *J. G.* v. *H. G.* (1870), 33 Md. 401 [3 Am.Rep. 183]), and the inability must only exist as to the particular spouse (S—— v. S——, *supra*).

Defendant here argues that since the testimony shows only a failure or inability to accomplish the marital act over a relatively short period of time without any showing of incurable incapacity, the judgment lacks the evidentiary support required by the above-quoted section of the Civil Code. Plaintiff argues that the evidence is sufficient as the corroboration requirement of section 130 of the Civil Code does not apply to annulment actions (*Roper* v. *Roper*, 100 Cal.App.2d 650 [224 P.2d 53]; *Goff* v. *Goff*, 52 Cal.App.2d 23, 28-29 [125 P.2d 848]).

The leading case on this issue in this state is *Hobbs* v. *Hobbs*, 10 Cal.App. 97 [101 P. 22], in which the defendant husband alleged error in the judgment of annulment granted on grounds of his physical incapacity on grounds of insufficiency of the evidence and failure of the complaint to state a cause of action.

The parties lived together for about two months. The wife testified that they were never able to consummate the marriage, while the husband testified that they had succeeded in doing so on several occasions. This court said at pages 99 and 100, in interpreting the statute:

"It is plain that this subdivision of the section only authorizes the annulment of the marriage where the 'physical incapacity continues and appears to be incurable.' It is necessary in such cases to allege and prove that the physical incapacity continues and appears to be incurable. It need not be alleged in the very words of the statute; but in case the language of the statute is not followed, the facts must be alleged to show that the physical condition is such that the impotence appears to be incurable. We can easily imagine cases in which it would only be necessary to allege the facts, and such facts would show that the physical condition would appear to be incurable. In the complaint there is not even an intimation of any defect, malformation or want of the usual sexual organs of defendant, but the bare statement that he is and continues to be incapable of performing his marital duties and having sexual intercourse with plaintiff. It is not alleged that plaintiff is normal in her sexual organs, or that it was not her fault. It is not shown as to whether or not the physical incapacity of

defendant was the result of disease or physical defect of the organs. There is no statement that such condition appears to be incurable.'' and then held that the evidence was insufficient as a matter of law, and that the complaint failed to state a cause of action.

In language particularly pertinent to the instant case, the court said at pages 101 and 102: ''It thus appears that there is a square conflict in the evidence of the only two persons who know the facts as to whether or not defendant was capable of having sexual intercourse.

''Conceding that, on this conflict of testimony, the finding of the court is conclusive here, still there is no evidence that such incapacity continued up to the time of the trial, or that it was incurable. No evidence was given as to any defect of the physical person or sexual organs of the defendant. No examination was made of his person, nor does any appear to have been asked for. The incapacity, if any, may have been caused by illness of nervous debility, and may have been temporary only. We know of no presumption that such condition is incurable. The time was short, and the only proof of impotency during such time is the testimony of plaintiff that the defendant did not, and could not, have sexual intercourse with her . . .''

Plaintiff here argues that the Hobbs case is distinguishable because she had established that she was normal and, therefore, that the failure to consummate the marriage was not her fault, and that the properly applicable authority here is *Putman* v. *Putman,* 116 Cal.App.2d 841 [254 P.2d 589]. In that case, the husband filed for an annulment; the wife was served with summons and defaulted. At the trial, the husband testified that he was potent and introduced medical testimony in support thereof; that he tried to enter into marital relations with his wife, but could not because of her incapability; and that prior to the marriage, he had asked his wife if she could be a wife in every sense of the word and she said she could. After hearing no other testimony, the trial court denied the annulment on the ground of insufficiency of the evidence. In reviewing this decision, the appellate court pointed out that two causes of action were proved, physical incapacity to enter in the marital state on the part of the wife, and fraud on her part in inducing the plaintiff to enter into the marriage. The court then said at page 842:

"It is the settled rule in this state that it is error for the trial court to arbitrarily refuse to grant a decree of annulment when plaintiff's testimony establishes grounds for annulment, and is not impeached, contradicted, or inherently improbable. (*Shepard* v. *Shepard*, 65 Cal.App. 310 [223 P. 1012] ; *Dobson* v. *Dobson*, 86 Cal.App.2d 13 [193 P.2d 794].)'" and reversed the judgment, with direction to enter judgment annulling the marriage as of the date of the judgment, because the defendant husband died after the judgment in the lower court but before submission in the appellate court. The court thus did not indicate whether the annulment had been granted on the basis of fraud [Civ. Code, § 82, subd. 4], or physical incapacity [Civ. Code, § 82, subd. 6]. The only cases cited by the court in its opinion throw no further light on this question, as in *Dobson* v. *Dobson*, 86 Cal.App.2d 13 [193 P.2d 794], the annulment was granted on the uncontradicted testimony of the plaintiff also corroborated by another witness that at the time of the purported marriage ceremony, he was so inebriated that he did not know what was taking place, and *Shepard* v. *Shepard*, 65 Cal.App. 310 [223 P. 1012], was an action for divorce based on extreme cruelty.

We do not think, therefore, the Putman case is either good authority here or applicable under the facts presented. Furthermore, we note that the precise question of sufficient proof of incurable physical incapacity has rarely been discussed in this state or other jurisdictions. In the few cases decided under subdivision 6 of section 82 of the Civil Code, the question of the sufficiency of the evidence apparently did not arise (for example, *Coats* v. *Coats*, 160 Cal. 671 [118 P. 441, 36 L.R.A. N.S. 844]). As this court said in *Hobbs* v. *Hobbs*, *supra*, at pages 102 and 103:

"While in modern times the courts do not adhere to the old rule as to three years' cohabitation to raise a presumption of impotence, yet they hold that the contract of marriage is of too solemn a nature and of too much importance to society to be set aside or annulled except upon clear proof of such physical condition of one of the parties at the time of the marriage that it would operate as a fraud upon the other party to compel them to live together as husband and wife in name only, without the comforts of marriage and with no prospect of children. *It is therefore in all cases necessary for the plaintiff to establish the impotence at the time of marriage and its incurable nature.* (Bishop on Mar-

riage, Divorce and Separation, vol. 1, § 786; *Griffith* v. *Griffith*, 162 Ill. 368 [44 N.E. 820]; *Bascomb* v. *Bascomb,* 25 N.H. 267; *Lawrence* v. *Lawrence,* 73 Ill. 577.)'' [Emphasis added.]

Plaintiff, however, argues that from defendant's age, from the testimony (also controverted) relating to his drinking habits, his statement that he had high blood pressure and a heart condition, etc., and from his statement in court that he married the plaintiff partly for companionship because at his age a person would have to, and her own normalcy, the court could properly infer that the defendant was incurably impotent at the time of marriage. We cannot agree, as our research discloses that (whatever the various requirements relating to corroboration) the courts have shown a definite reluctance to raise a presumption of impotence except where the claims or admissions of the parties are corroborated by some other facts (*Pickston* v. *Dougherty* (Fla.App., 1959), 109 So.2d 577). This is particularly so in instances such as this one, where the inference would have to be based in part on the plaintiff's testimony as to the declaration or confession of the defendant (*Dorsey* v. *Dorsey* (1951), 256 Ala. 137 [53 So.2d 601]; *Brown* v. *Brown* (1925), 207 Ky. 133 [268 S.W. 801]; *Williams* v. *Williams* (1911), 1 Tenn. Civ.App. 538; *Anonymous* v. *Anonymous* (1910), 69 Misc. 489 [126 N.Y.S. 149]; in *Bissell* v. *Bissell* (1922), 93 N.J. Eq. 537 [117 A. 252], the marriage lasted five months and the court found sufficient corroboration in the husband's refusal to submit to an examination) (*S-* v. *S-* (1942), 42 Del. (3 Terry) 192 [29 A.2d 325], and *Merrill* v. *Merrill* (1879), 126 Mass. 228 are similar.) The reason for this reluctance is the state's interest in the marital state, the prevention of collusion or other attempts to falsely destroy the marital relationship (*Maduro* v. *Maduro,* 62 Cal.App.2d 776, 779 [145 P.2d 683]), as well as the fact that even a medical testimony may only be of very limited value (McCann, *The Medico-Legal Significance of Impotence in the Male and in the Female,* 1 Medico-Legal and Crim. Rev. 31 [1933]; note 180 Law Times 392 [1935]).

The courts have, however, inferred impotence from a voluntary [or involuntary] refusal of marital relations due to a psychological or nervous condition over a sufficient period of time (*Vanden Berg* v. *Vanden Berg* (1923), 197 N.Y.S. 641; *Hiebink* v. *Hiebink* (1945), 56 N.Y.S.2d 394, affd. w/out op. 269 App.Div. 786 [56 N.Y.S.2d 397]). Some courts have also developed a doctrine of ''practical incapacity'' where

there is no apparent physical incapacity (*A.B.* v. *C.B.* (Scotland, 1906), 8 Sc. Sess. Cas. 5th Series 603; *G.* v. *G.* (Eng., 1924), A.C. 349, 13 B.R.C. 573) and granted an annulment on such grounds (see other cases cited in 28 A.L.R.2d 511). We also note that in all of these cases, the condition from which the court inferred impotence existed over a reasonable period of time, and where the condition was of short duration, an annulment has been refused (*Heller* v. *Heller* (1934), 116 N.J. Eq. 543 [174 A. 573], two months; *Korulak* v. *Korulak* (Sask., 1921), 1 West Week 1072, 57 A.L.R. 746, one week).

Nor can we agree that the defendant's age is a significant factor in the plaintiff's favor, as she contends. In such situations, the courts take the position that the plaintiff is in the same position as a person who marries after warning of impotency (*Fulmer* v. *Fulmer* (Pa., 1879), 13 Phila. 166 [36 Leg. Int. 193]; *Hatch* v. *Hatch* (1908), 58 Misc. 54 [110 N.Y.S. 18]; *Goodner* v. *Goodner* (1923), 147 Tenn. 517 [249 S.W. 805, 33 A.L.R. 1222]; *Anonymous* v. *Anonymous* (1947), 74 N.Y.S.2d 899).

We think, therefore, that in this case, we are constrained to follow the earlier view expressed by this court in *Hobbs* v. *Hobbs,* 10 Cal.App. 97 [101 P. 22]. As we indicated there, our statute requires clear proof of the permanent and incurable physical incapacity of one of the parties, if an annulment is granted on the grounds specified in subsection 6. While we are aware of the problem of proving impotence even by expert evidence, we think that the existence of such a ground for annulment against the defendant, susceptible as it may be, of more certain determination by expert examination, should not be decided against him unless such decision is supported by more evidence than was produced here. This additional evidence might be the evidence of a physician who has made an examination, or evidence of an existing malformation or organic defect, or evidence of the existence of a physical or psychological condition persisting over a period of time sufficient from which a court could infer impotence or exclude that there was a practical impossibility of marital relations between the two parties. It should, however, be the best evidence obtainable, as in other cases (*cf. Bunger* v. *Bunger* (1911), 85 Kan. 564 [117 P. 1017, Ann. Cas. 1913A 126]; *Long* v. *Long* (1941), 191 Ga. 606 [13 S.E.2d 349]).

We can only conclude that the evidence here presented was not sufficient to support the judgment of annulment on

the grounds of subsection 6 of section 82 of the Civil Code because of the absence of evidence that the condition appears to be incurable. We think, apart from the above, this conclusion is strengthened by plaintiff's own testimony that the parties had intercourse during the prior marriage and that on re-trial of this aspect of the case, the plaintiff might find it easier to concentrate on her second cause of action.

We turn now to the second argument on appeal which is that the trial court erred in failing to cancel the deed of gift conveying the property at 75 Vista Drive from the defendant to the plaintiff, because the gift was induced by a mistake of fact. Defendant argues that he is entitled to have the deed cancelled and returned to him because the deed had been executed and delivered to the plaintiff in the belief and upon the understanding that the parties had entered into a valid marriage.

The record reveals the following: The plaintiff testified that after they returned to Salinas from Watsonville where the marriage was performed, the defendant told her he would give her the new home as a wedding present; they went to the title company where the deed was made out in her name; he then told her to have it recorded, and she said she would do so on another day when she had more time. The defendant testified that the plaintiff asked him to deed the property to her to protect her in case anything happened to him; that he gave the gift deed to her and asked her not to have it recorded until something happened to him. It is uncontroverted that the deed was delivered and executed on May 21, 1958, and recorded on May 26, 1958.

It is clear from the record that the trial court found that the deed was validly executed and delivered, and, therefore, could not be set aside in the absence of fraud. Defendant, however, argues that the deed should have been set aside as it was induced by a mistake as to a basic fact, i.e., the mutual assumption of the parties that they were validly married, which was negated by the decree of annulment. Defendant cites *Earl* v. *Saks & Co.*, 36 Cal.2d 602, 609 [226 P.2d 340], in which our Supreme Court approved sections 26 and 39 of the Restatement of the Law on Restitution, and *Coats* v. *Coats*, 160 Cal. 671 [118 P. 441, 36 L.R.A. N.S. 844], wherein the court stated that in dividing the gains made by the joint efforts of the parties to a voidable marriage which is subsequently annulled, the proper procedure was an equitable division analogous to the rules applicable to community

property where a valid marriage is terminated by death or divorce. While these authorities are persuasive, and we would like to apply them to these circumstances, we cannot do so. The record indicates that defendant did not plead or argue the theory of mistake of fact, but based his entire third cause of action for rescission on a theory of fraud and we are in agreement with the court below that he has not proved such fraud. It is well settled in this state that unless mistake is pleaded, it may not be relied upon for the first time on appeal (*Patterson* v. *Davis,* 121 Cal.App.2d 152 [262 P.2d 601]; *Wood* v. *Metzenbaum,* 107 Cal.App.2d 727 [237 P.2d 703]; *Brandt* v. *Brandt,* 32 Cal.App.2d 99 [89 P.2d 171]; *Harding* v. *Robinson,* 175 Cal. 534 [166 P. 808]; *Pierson* v. *McCahill,* 21 Cal. 123).

We note that there is a curious inconsistency in defendant's argument in insisting that the annulment was improperly granted, and at the same time arguing that the deed based on his mistaken belief in the validity of the marriage must be cancelled because the effect of the decree of annulment was that no valid marriage ever existed.

The evidence before the trial court was sufficient to support a finding that defendant made a valid deed of gift to plaintiff. Conflicts were for the trial court to resolve.

In view of the foregoing, the portion of the judgment annulling the marriage of the parties is reversed, and the portion of the judgment awarding the defendant the household furniture and declaring the validity of the deed of gift to the plaintiff is affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied August 17, 1961, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.